**UNITED STATES of America,**

v.

**Martin SKLAROFF, Jesse Sklaroff, William Sklaroff, Edward Richman, Jerome B. Hersch, aka Jerry Hersch, Phillip Blott, Joseph Jachman, Henry Gordon, and John Michael DePasquale.**

**No. 70–143–CR.**

United States District Court,
S. D. Florida.

Feb. 11, 1971.

Dougald D. McMillan and J. Robert Sparks, Trial Attys. U. S. Dept. of Justice, Miami, Fla., for plaintiff.

James J. Hogan, Alan E. Weinstein, Miami Beach, Fla., E. David Rosen, Miami, Fla., Oscar B. Goodman, Las Vegas, Nev., Richard H. Siegel, Cleveland, Ohio, for defendants.

## ORDER ON PRE–TRIAL MOTIONS

CABOT, District Judge.

Movants were indicted by a Grand Jury in this District on March 25, 1970. The 23-count indictment charges, in pertinent part, that certain of the Movants, being engaged in the business of betting and wagering, did, aiding and abetting each other, use and cause to be used wire communication facilities in interstate commerce for the transmission by tele-phone from Dade County, Florida, to other specified cities in Pennsylvania, Ohio, Maryland, and Nevada of either bets and wagers, or of information assisting in the placing of such bets and wagers, on sporting events and contests, or both, in violation of Sections 1084 and 2, Title 18, United States Code.

Movants Martin Sklaroff and Jesse Sklaroff are named as Defendants in all 23 counts of the indictment. Movants William Sklaroff and Edward Richman are named as Defendants in Counts One through Six. Movants Phillip Blott and Jerome B. Hersch are charged as Defendants in Counts Seven through Eleven; Movants Joseph Jachman and Henry Gordon are named as Defendants in Counts Twelve through Seventeen; and Movant John Michael DePasquale is charged as a Defendant in Counts Eighteen through Twenty-Three.

Each count of the indictment further specifies, with unusual particularity, the numbers and locations of the telephones allegedly used, the Defendants allegedly speaking, the gist of the allegedly unlawful conversation, the persons placing and receiving such long distance telephone calls and even the exact hour and minute when said calls were allegedly placed. The dates alleged in the 23 Counts fall into a six-day period from June 19, 1969 to June 24, 1969, inclusive.

From the pleadings and evidence adduced before this Court in the hearing on the pre-trial motions, it appears that this prosecution is based upon interceptions and recordings by Special Agents of the Federal Bureau of Investigation (hereinafter abbreviated as "F.B.I.") of telephone conversations originating from four specified pay telephone booths located at the Miami International Airport in Dade County, Florida, between June 19 and June 24, 1969. These interceptions were carried out under authority of an Order of Authorization to Intercept issued on June 17, 1969 by United States District Judge W. O. Mehrtens, Southern District of Florida, upon application by the United States, under the provisions of Title III, Omnibus Crime Control and

Safe Streets Act of 1968, P.L. 90–351, 82 Stat. 211–225, Chapter 119 of Title 18, United States Code (hereinafter referred to as "Title III" for brevity). The lawfulness of this order and of its manner of execution by the F.B.I. is attacked by Movants herein, as well as the constitutionality of Title III itself.

It further appears and is undisputed by any of the parties that portions of the telephone conversations so intercepted were incorporated into probable cause affidavits by F.B.I. Agents and presented to United States Commissioners as the basis for search warrants for the residences, persons or automobiles, or both, of all Movants herein, except Movant DePasquale. The search warrants were executed by Special Agents on July 3, 1969, and alleged gambling paraphernalia, records, and money was seized from a number of Movants. Motions to suppress have been filed by those Movants before this Court.

There have been a number of motions and actions filed by certain of these Movants prior to indictment and prior to this indictment being assigned to this Court for jury trial. These merit some discussion, because these same motions previously ruled upon by other District Judges have been renewed before this Court in pre-trial motions. Also, the transcript of evidence in previous hearings has been filed in this Court by mutual consent of counsel for Movants and for the United States, for the consideration of this Court.

I. *Pre-Indictment Actions and Motions not Heard or Ruled Upon by this Court*

On August 12, 1969, Movants Martin Sklaroff, Jesse Sklaroff, William Sklaroff, Phillip Blott, and Eddie Richman, together with one Elmer H. Dudley, and other persons not indicted in this case, filed Civil Action 69–4–Misc-Civil, styled "In Re: Application of United States of America" in the United States District Court for the Southern District of Florida, seeking the return of their intercepted communications and all evidence derived therefrom and to suppress the same from being received in evidence before any Grand Jury or Court. At this time neither the intercepted communications, the participants thereto, nor any matter relating to the circumstances surrounding the conversations had been presented to any Federal Grand Jury. The Government responded with a motion requesting a ruling that petitioners' motions were not timely made. This civil action was heard and ruled upon by District Judge W. O. Mehrtens, the same Judge who had issued the order authorizing the interception.

After filing of briefs, argument, and several evidentiary hearings, Judge Mehrtens issued an opinion and order dated September 2, 1969, holding:

1. That the Order of Authorization is sufficient on its face and fully meets the requirements of 18 U.S.C. Sections 2517, 2518, and 2519.

2. That the concluding sentence of said Order be and it hereby is corrected, *nunc pro tunc*, to conform with and to show the truth, to wit:

"DONE and ORDERED at Miami, Florida, this 17th day of June, 1969."

3. That sufficient probable cause was shown in the obtaining of said Order.

4. That the interception of conversations was otherwise lawful in all respects.

5. That no rights of Petitioners guaranteed by the United States Constitution and its Amendments were violated.

6. That Title III of the Omnibus Crime Control and Safe Streets Act of 1968 is on its face constitutional, and its application in this case likewise violated no constitutional amendment.

7. That the Motions to Suppress and Petitions for Disclosure are prematurely made.

8. That all of Petitioners' motions are denied in all respects.

Notices of Appeal from this Order of Judge Mehrtens were timely filed but no stay of the Order was requested or obtained by any Appellant. As previously stated, this indictment was subsequently returned on March 25, 1970.

The Government filed a motion to dismiss the appeal in the Fifth Circuit Court of Appeals on the grounds that (1) the motion to suppress was prematurely brought prior to indictment and (2) indictments having since been returned, denial of the motion to suppress was an interlocutory order and therefore not appealable. The appeal was dismissed without ruling upon the merits of Judge Mehrtens' Order as to the legality of the wiretaps. Application of United States, (Dudley et al. v. United States), 5 Cir. 1970, 427 F.2d 1140.

In another civil action prior to indictment in the Northern District of Georgia, Elmer H. Dudley sought to suppress evidence obtained by a July 3, 1969 search of his premises in Atlanta, Georgia, under authority of a Federal search warrant based in part on probable cause obtained from the intercepted telephone conversations authorized by Judge Mehrtens' Order. United States District Judge Sidney O. Smith, Jr. held in an Opinion and Order dated January 5, 1970 that "the absence of the date in the authorization order (of Judge Mehrtens') did not preclude consideration of the wire-tap information and the *nunc pro tunc* order effectively corrected any deficiency therein." Dudley v. United States, 320 F.Supp. 456 (N.D.Ga.).

Judge Smith further denied the motion to suppress in all respects except as to certain money seized from said Dudley. An appeal of this Order was likewise dismissed on motion of the United States in an Order without opinion by the Fifth Circuit Court of Appeals.

Finally, this Court has a copy of an unpublished opinion by United States District Judge Newell Edenfield, Northern District of Georgia, dated September 30, 1970, filed in Indictment No. 26,355 in which Martin Sklaroff and Jesse Sklaroff were indicted along with Co-defendants Elmer Hanford Dudley and Barney Tillman Berry on March 3, 1970 for violations of 18 U.S.C. §§ 2, 371, and 1084. From careful study of Judge Edenfield's opinion, it appears that Movants Martin Sklaroff and Jesse Sklaroff have filed pre-trial motions in that case which are virtually identical to many of those filed in the instant case before this Court. Judge Edenfield refers to the prior rulings of Judge Mehrtens and Judge Smith and accepts their rulings, subject to a determination as to what extent the defendants, including Berry who was not a party to those prior civil actions, are bound by the prior rulings. United States v. Skarloff, et al., Indictment No. 26,335, N.D.Ga.1970 (unreported).

Thus it appears that many issues in this case have already been considered and ruled upon by three United States District Judges prior to their coming before this Court for decision.

This Court is deeply concerned about the propriety of my considering *de novo* many of the issues which have already been determined by my colleague on the bench of this Court, Judge Mehrtens, after extensive evidentiary hearings and arguments of law. After considerable study, I am constrained to consider and rule *de novo* on these questions for the following reasons:

1. Movants Joseph Jachman, Henry Gordon, Jerome B. Hersch, and John Michael DePasquale were not parties. to the civil action brought before Judge Mehrtens. It is therefore doubtful that they "have had their day in Court" and would be bound by the rulings of Judge Mehrtens.

2. Since the Fifth Circuit Court of Appeals in *Application*, supra, ruled in Division 4 of its opinion that "We agree with the district judge that nothing in the Omnibus Act, particularly § 2518(10) (a), created a statutory exception that would permit a pre-indictment motion to suppress evidence that might be presented to a grand jury" (427 F.2d at 1141–1142), it might be arguable that the entire proceeding before Judge Mehrtens, including his Order on the merits, was a complete nullity, not being authorized by statute.

3. Judge Mehrtens in his Order did not decide the issue of whether June 24, 1969 was the seventh day within the

term of his Order authorizing interceptions. This issue must now be decided because Counts Eleven and Sixteen allege illegal interstate telephone conversations occurring on June 24, 1969.

Having thus summarized the background of this complicated case, the Court will consider the numerous pre-trial motions filed by Movants. The most numerous and sweeping motions were filed by Movants Jesse Sklaroff, Martin Sklaroff, Jachman, Gordon, and Blott. The contentions of the first four are virtually identical in all respects, and the contentions of Movant Blott, although broader in some respects, are very similar in nature. Movants William Sklaroff, Blott, Richman, and DePasquale adopt all motions filed by the other Movants, and in addition move for severance and separate trial. Movant Hersch contents himself with three pre-trial motions, including separate trial. The Court will therefore rule upon the motions as a whole with respect to all issues raised without dealing separately with each group of motions by each Movant, because the latter course would be largely repetitious and would cause this Order to be unduly lengthy. Where contentions are raised by one or more Movants which are not raised by others, however, the Court will rule separately upon such contentions.

## II. *The Constitutionality of Title III*

All Movants, except Hersch, challenge the constitutionality of Title III. Some raise the question by way of motions to dismiss the indictment, while others move to suppress the intercepted telephone conversations and all evidence derived therefrom, and some raise the question by both motions. The Government's case is admittedly almost entirely based upon those intercepted and recorded conversations under authority of Judge Mehrtens' Order of Authorization to Intercept, issued pursuant to 18 U.S.C. § 2518. If Movants are correct in their assertions that Title III is unconstitutional, the entire prosecution must fail. I shall therefore examine that issue first.

To begin with, Congress when passing Title III made certain findings, including the finding that:

"Organized criminals make extensive use of wire and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice." (Section 801[c])

This subject of court-authorized use of "wiretaps" and "bugs" in criminal investigations has been the subject of intensive research and investigation by numerous panels of distinguished laymen, attorneys, judges, law professors, and by Congress in recent years. Among the study groups which have approved court-authorized electronic surveillance of oral conversations in principle, with strict safeguards to prevent its abuse, are the following:

The Advisory Committee on the Police Function, American Bar Association Project on Minimum Standards for Criminal Justice (1968); The Report of the English Privy Counsel (1957); the President's Commission on Law Enforcement and Administration of Justice, the Challenge of Crime in a Free Society (1967); The Judicial Conference of the United States, House Document No. 194, 90th Cong. 1st Sess. 80 (1967); The National Association of Attorneys General, S.Rep.No.1097, 90th Cong. 2nd Sess. 75 (1968); The National District Attorneys Association, S.Rep.No. 1097, 90th Cong. 2nd Sess. 76 (1968); The National Council on Crime and Delinquency; The Association of the Bar of the City of New York, Committees on Federal Legislation and Civil Rights, Report of April 24, 1968; and The Subcommittee on Constitutional Rights of the Committee on the Judiciary, (Wiretapping and Eavesdropping) United States Senate, 87th Cong. 2nd Sess. (1962).

Title III as enacted in 1968 appears to be the culmination of this intensive research.

The Supreme Court of the United States has also had occasion to deal with the question of court-authorized wiretaps and "bugs" in a number of recent opinions, including Berger v. New York, 1967, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed. 2d 1040; Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Osborn v. United States, 1966, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394; Hoffa v. United States, 1966, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374, and Lopez v. United States, 1963, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462. An earlier case on the subject is On Lee v. United States, 1952, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270.

The attacks of Movants upon the constitutionality of Title III fall generally into two broad classifications although they make numerous complaints about virtually every section of that Act. First, Movants urge that any "wiretap", whether court-authorized or not, is an unconstitutional invasion of privacy, except possibly in situations involving the national security of the country. Secondly, they complain that Title III does not comply with the constitutional mandates laid down by the Supreme Court in Berger, Katz and Osborn, supra.

I find no merit in the "invasion of privacy" argument. It is true that the Supreme Court found numerous constitutional infirmities in the New York permissive eavesdrop statute in Berger v. New York, supra, e. g., no requirement for belief that any particular offense is being committed; no requirement that the anticipated conversations be particularly described; authorization of eavesdropping for a two-month period, with possible extension for like periods upon a mere showing that the extension is "in the public interest"; no termination date on the eavesdrop once the conversation sought is seized; and no requirement for a showing of "exigent circumstances" sufficient to justify the lack of notice to the person who is the subject of the eavesdropping. However, in the Berger opinion, the Supreme Court contrasts the broadness and vagueness of the New York statute with the facts in Osborn v. United States, supra, where the Court held admissible in evidence an electronic recording of a conversation obtained through an invasion of privacy because of the authorization of two United States District Judges based upon "a detailed factual affidavit alleging the commission of a specific offense directly and immediately affecting the administration of justice—for the narrow and particularized purpose of ascertaining the truth of the affidavit's allegations." (388 U.S. 41, 57, 87 S.Ct. 1873, 1882)

The Supreme Court further said in Berger, supra, speaking of the Osborn case that "the invasion was lawful because there was sufficient proof to obtain a search warrant to make the search for the limited purpose outlined in the order of the judges."

It therefore appears to me that implicit in the holding of the majority of the Supreme Court (there were four dissents holding the statute constitutional) in Berger, supra, is the implication that had the New York eavesdropping statute not contained all the constitutional weaknesses enumerated by the majority, the statute would not have been held unconstitutional because it authorized an invasion of privacy.

This implication is bolstered by the case of Katz v. United States, supra, where an electronic recording device was placed on the outside of a public telephone booth to record the Defendant's end of telephone conversations within the booth. The Supreme Court reversed in that case solely because no order had been obtained from a judge authorizing the use of the device, stating in part that:

"It is clear that this surveillance was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it was to proceed, and clearly apprised of the precise intrusion it would entail, could constitutionally have authorized, with appropriate

safeguards, the very limited search and seizure that the Government asserts in fact took place." (389 U.S. 347, 354, 88 S.Ct. 507, 513)

The Supreme Court said further in *Katz*, referring to the order of the judges in *Osborn*, that "Here, too, a similar judicial order could have accommodated 'the legitimate needs of the law enforcement' by authorizing the carefully limited use of electronic surveillance." (389 U.S. 347, 355, 88 S.Ct. 507, 513)

It is true, as pointed out by Movants, that *Osborn* involved only a "bug" on the person of an informer, and *Katz* involved only the recording of one person's words spoken into a telephone. They argue that since a wiretap involves an invasion of privacy of not only the suspect for whom the order was obtained but also that of unknown persons who may telephone the suspect or be telephoned by the suspect, the area of possible invasion of privacy is so broadened as to be unconstitutionally impermissive

This Court cannot agree with this argument. I can see little practical difference between an order authorizing the wiretap of a suspect's telephone and an order authorizing the placing of a recording device in his office or home, or upon the person of his associate. In the latter event, there is also a strong probability that the conversations of persons other than the suspect will be recorded without their knowledge and without prior notice to them.

■ In summary, this Court holds that Title II is not unconstitutional because it permits an invasion of privacy.

Dealing more briefly with Movants' complaints about the provisions of Title III itself, I reject Movants' argument that certain sections of Title III are in derogation of the criteria set forth by the Supreme Court in Berger v. New York, supra. On the contrary, I find from a study of the legislative history that the United States Senate was intensely aware of the guidelines set out in *Berger*, and drew this statute with a view to complying fully with those guidelines. See the record of the floor debate, 114 Cong.Rec. 90th Cong. 2nd Sess., Pages 6186–6292.

For example, Movants argue that because 18 U.S.C. § 2518(5) permits court-authorized electronic surveillance for a maximum period of 30 days, it is in derogation of the *Supreme Court's* holding in *Berger* that a two-month period is too long, and that during such a prolonged period, the conversations of all persons coming into the area of the intercepting device will be seized indiscriminately and without regard to their connection with the crime under investigation.

Title III provides remedies for this criticism by the Supreme Court of the New York statute. Section 2518(5) requires that every order of authorization to intercept an extension shall contain a provision that the authorization to intercept shall (1) be executed as soon as practicable, (2) be conducted so as to minimize interception of communications not otherwise subject to interception, and (3) terminate upon attainment of the authorized objective.

If a wiretap or "bug" is operated in compliance with the foregoing section, there is no way the evil of "indiscriminate continuous intrusion" condemned by the Supreme Court in *Berger* can exist.

A further safeguard against lengthy, unnecessary, and prolonged electronic surveillance is the provision in 18 U.S.C. § 2518(6) authorizing the issuing judge to require progress reports and a showing of the need for continued interception at intervals fixed by the judge. Thus, the issuing judge can, in effect, control the duration of the interceptions and terminate them when they should be terminated.

With regard to the maximum period of authorized interception, Senate Report 1097 (90th Cong. 2nd Sess., April 29, 1968) states in pertinent part, U.S. Code Cong. & Admin.News 1968, at Page 2190:

"Where it is necessary to obtain coverage to only one meeting, the order

should not authorize additional surveillance * * * Where a course of conduct embracing multiple parties and extending over a period of time is involved, the order may authorize proportionately longer surveillance but in no event for longer than 30 days, unless extensions are granted * * * What is important is that the facts in the application on a case-by-case basis justify the period of time of the surveillance."

The Court therefore holds that the provisions of 18 U.S.C. § 2518(6), when considered together with the expressed legislative intent, are entirely consistent with the pronouncements of the Supreme Court on the subject in *Berger*.

■ Movants further argue that Title III violates the particularity requirement of the Fourth Amendment because it allows the intercepting officers to listen to all conversations that fit the *type* specified in the order of authorization. It appears to this Court that it is sufficient for the order to show a finding of probable cause that conversations will be overheard implicating the suspect in a specified pattern of criminal conduct, without describing the specific content of the anticipated conversations. It would be virtually impossible for the applicant for the order to predict in advance the exact language of a conversation which has not yet occurred. To impose such an absolute requirement upon an applicant would render Title III totally ineffective, because if the applicant guessed wrong on the exact predicted language, the evidence of the conversation would be inadmissible, even though it related to the crime under investigation.

■ Defendants argue further that since Title III does not exclude intercepted conversations about *another* crime other than the one specified in the order, it lacks particularity. There is no merit to this contention. It is settled law in search and seizure cases that certain items not named in the search warrant may be seized if discovered in the course of a lawful search. Bryant v. United States, 5 Cir. 1958, 252 F.2d 746; Johnson v. United States, 1961, 110 U.S.App. D.C. 351, 293 F.2d 539, cert. denied 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118; Marron v. United States, 1927, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; Palmer v. United States, 1953, 92 U.S.App.D.C. 103, 203 F.2d 66; Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. By analogy, the same rule should apply to conversations, which are "seizures" under the *Katz* case. 18 U.S.C. § 2517 provides that, when approved by a judge of competent jurisdiction, intercepted conversations relating to other crimes may be used as evidence or divulged, provided the original interception itself was authorized by a lawful court order. This is only a re-statement of existing case law, adapted to fit the electronic surveillance situation. This Court considers these contentions to be without merit.

■ Defendants further contend that testimonial evidence of crime cannot be seized. However, the Supreme Court in recent cases has held that such testimonial evidence *may* be seized. On Lee v. United States, supra; Lopez v. United States, supra; Hoffa v. United States, supra, and Osborn v. United States, supra. Movants attempt to distinguish these cases because they involve informants and hidden recording devices concealed upon the persons of individuals whom the respective defendants knew were present rather than telephone wiretaps. In the Court's view, however, much the same factual situation exists because those defendants *did not know* that their conversations *were being recorded,* which is exactly the situation existing when a person's *telephone* conversation is being recorded without his knowledge. I hold that testimonial evidence may be seized pursuant to the provisions of Title III.

■ It is further contended by Defendants that Title III is unconstitutional because it authorizes interception of wire or oral communications without "prior notice" to other parties to the conversation and to the party at whom

the interception is directed. In this respect, Ker v. California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, authorizes an entry, without notice under "exigent circumstances." In my opinion, Title III does require such a showing before an order of authorization may issue. An order authorizing a wiretap or "bug" cannot be obtained in just any context of the enumerated crimes, no matter how strong the probable cause may be. 18 U.S.C. § 2518(3) (c) authorizes the judge to issue an interception order *only* if he determines from the facts submitted by the applicant, in addition to other required findings, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." An interception order is thus authorized only where no other reasonable method of investigation is available. I find no merit in this contention of Movants.

This Court has carefully considered all other contentions relied upon by Movants to support their position that Title III is unconstitutional and find them to be without merit.

Therefore, I am in complete agreement with the prior order of District Judge W. O. Mehrtens dealing with the constitutionality of Title III. This Court finds that Title III is constitutional on its face in all respects. All motions of all Movants which pray for relief because of the alleged unconstitutionality of Title III, whether by motions to dismiss the indictment, to suppress the intercepted conversations and evidence derived therefrom, or otherwise, are overruled and denied.

III. *The Motions for Discovery and Inspection*

Taken collectively, voluminous motions for discovery and inspection have been filed by Movants. Counsel for the United States have been very reasonable in agreeing to make available to Movants many of the items contained in the several motions.

Among the items already turned over to Movants or made available to them for inspection and copying are the following: a 647 page transcript of all intercepted and recorded conversations of all Movants during the period June 19–24, 1969; an identical copy of the sound tapes of said conversations; the make and model of the machine used in said interceptions; the names and addresses of the F.B.I. Agents who monitored those conversations; a copy of the memorandum of an oral report to Judge Mehrtens by the supervising Justice Department attorney on June 19, 1969, during the interceptions; a motion picture film of Movants William Sklaroff and Jesse Sklaroff made by F.B.I. Agents; statements of all Movants made to F.B.I. Agents; and a photograph of a pay telephone in a service station in Cleveland Heights, Ohio.

In addition, Movants have been furnished with copies of much documentary evidence seized from them and with descriptions and photographs of physical evidence seized from them. Government counsel have also advised Movants of the general nature of documentary evidence it intends to introduce in evidence which must be subpoenaed from third parties.

The Government has also turned over to Movants Martin Sklaroff and Joseph Jachman copies of the logs of prior electronic interceptions of their conversations, pursuant to Alderman v. United States, 1969, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176. No motions in regard to these interceptions have yet been filed by Movants.

The Court is aware of the foregoing compliance by the Government through the Government's response, proceedings in open Court and by virtue of a report to the Court on Discovery Items filed by the Government on October 30, 1970.

In addition, the Government has agreed to furnish Movants with results and reports of scientific tests and experiments and physical or mental examinations (except for testimony of experts in

the gambling field), and the criminal records of any Government witnesses (to be furnished after they have testified on direct examination). The motions for discovery and inspection are therefore granted as to all those items.

■ The substantial and voluntary compliance by Government counsel to Movants' requests for discovery does not leave many issues upon which the Court must rule. Some but not all of Movants have asked inspection of interoffice airtels, memoranda, surveillance notes, logs, books, and workpapers relating to the investigation compiled by and in the possession of the Government. The Government opposes this motion as being expressly excluded from pre-trial discovery and inspection by Rule 16(b), F.R.Crim. P., as being internal Government documents. The Court sustains the Government's objection to pre-trial discovery and inspection of internal Government documents. United States v. Johnson, N.D.Ill.1969, 298 F.Supp. 58; United States v. Barber, D.Del.1969, 297 F.Supp. 917; United States v. Battaglia, 7 Cir. 1969, 410 F.2d 279, cert. denied 396 U.S. 848, 90 S.Ct. 73, 24 L.Ed.2d 97; United States v. Zirpolo, D.N.J.1968, 288 F. Supp. 993; United States v. Westmoreland, S.D.Ind.1967, 41 F.R.D. 419, and Clay v. United States, 5 Cir. 1968, 397 F.2d 901, vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297.

By denying pre-trial discovery and inspection of these internal Government documents, the Court is not foreclosing the possibility that the Government may be ordered to produce during the jury trial specified Government documents, if they are shown to be material to any issue in the trial. Movants may renew their motions for production of specified Government records during the trial, if and when such documents are shown to be material, and the Court will then rule upon the motion as renewed.

■ Some Movants seek pre-trial discovery of a list of names, addresses, and statements of prospective Government witnesses. The Government opposes this motion as being specifically excluded from discovery under Rule 16(b), F.R. Crim.P., and as being producible only after the witness has testified on direct examination, pursuant to the so-called "Jencks Act" (18 U.S.C. § 3500). The Government points out further that only in capital cases is a list of prospective witnesses required to be furnished a defendant, citing 18 U.S.C. § 3432.

The Court rules that the Government's position is well taken. United States v. Chase, 4 Cir. 1967, 372 F.2d 453; Archer v. United States, 5 Cir. 1968, 393 F.2d 124; United States v. Barber, supra; United States v. Margeson, E.D.Pa.1966, 261 F.Supp. 628; United States v. Birrell, S.D.N.Y.1967, 276 F.Supp. 798; United States v. Elife, S.D.N.Y.1967, 43 F.R.D. 23; United States v. Turner, E.D. Tenn.1967, 274 F.Supp. 412; United States v. Westmoreland, supra; Rule 16 (b), F.R.Crim.P.; 18 U.S.C. § 3500.

The Court therefore overrules and denies these motions for pre-trial discovery and inspection of written and recorded statements of prospective Government witnesses relating to their testimony which are in possession of the Government.

However, in order to allow defense attorneys to be better prepared for cross-examination of Government witnesses, the Court rules that the Government prosecutors shall file with the courtroom Clerk of this Court at the end of each trial day, copies of all written or recorded statements which are producible under 18 U.S.C. § 3500 of all witnesses who are expected to testify for the Government on the succeeding trial day, to be turned over by the courtroom Clerk to defense counsel immediately or at such later time as defense counsel may request. As thus modified, the motions for pre-trial inspection of such statements are denied.

■ A motion for disclosure of names and addresses of witnesses whose testimony might be favorable to Movants was opposed by the Government in its Response on the ground that pretrial dis-

covery was not contemplated by Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Government counsel stated in their Response that they were aware of their obligation under *Brady*, supra, and would comply with it. They further stated that at this time they knew of no such witnesses favorable to Movants. The Court is of the opinion that in view of these statements by Government counsel and also because pre-trial discovery in this area is not contemplated by Brady v. Maryland, supra, the motion should be overruled and denied. See United States v. Zive, S.D. N.Y.1969, 299 F.Supp. 1273, and United States v. Manhattan Brush Company, S.D.N.Y.1965, 38 F.R.D. 4.

■ One final pre-trial discovery motion merits brief discussion. Several Movants have asked discovery of telephone numbers, if any, obtained by the Government through the use of a pen register or other device on telephones used by any of the Movants. The Government opposes this in a detailed Response, pointing out that Movants have already been furnished with the complete sound tapes and transcripts of all recorded telephonic intercepted conversations, and should therefore be able to determine for themselves the number called by subject matter and by voice identification. Government counsel further characterize this motion as a "fishing expedition" on the part of Movants "to find out what the Government has learned about their illegal operation." They further point out that in each of the 23 interstate conversations which are the subject of counts of the indictment, the number called is apparent from the transcript and the tapes, and that only local (Miami) calls and incoming calls (received in the pay telephone booths) are not thus revealed by the transcript and tapes.

The Court finds that neither in their motion nor during the hearing in open Court did the Movants make any attempt to show the materiality to their defense of learning before trial *what the Government had learned* about the origin of telephone calls not charged in any count of the indictment. Neither do they allege that they do not know these numbers themselves. They just want to know if the Government has ascertained these telephone numbers; and do not explain their need to know. This motion is controlled by Rule 16(b), F.R. Crim.P., which authorizes the Court to order discovery and inspection "upon a showing of materiality to the preparation of his defense and that the request is reasonable." There has been no such showing by Movants. The motion is therefore overruled and denied. The Court notes that an identical motion by Movants' Martin Sklaroff and Jesse Sklaroff in the Atlanta, Georgia, indictment (No. 26,335, N.D.Ga.) was overruled and denied by Judge Edenfield, Northern District of Georgia. I agree with that decision. If developments upon the trial should show the materiality of the Government's knowledge or lack of knowledge of these telephone numbers, Movants may renew their motion and the Court will reconsider its ruling herein.

■ Finally, Movant DePasquale moved for inspection of an alleged application to United States District Judge Roger Foley, District of Nevada, and for that Court's ruling thereon, for an order authorizing interception of wire communications of said DePasquale, alleging that such application was made by the United States and that no inventory was served upon him. Government counsel opposed this Motion on the ground that it is completely immaterial and irrelevant to any issue in this case what action another Federal judge in Nevada might have taken on an application to wiretap DePasquale's telephone, since all the counts relating to him resulted from the wiretaps in Miami, Florida, authorized by Judge Mehrtens.

In the hearing, Movant DePasquale did not offer any evidence whatever to connect the probable cause for the Miami wiretap to the alleged application for a wiretap order in Nevada. Indeed, the application for the Miami wiretap shows affirmatively that no legal proceeding in

Nevada played any part in the probable cause. Movant DePasquale's name is not even mentioned in the Miami application.

In fact, Movant DePasquale claims that Judge Foley *denied* the application (DePasquale Brief, Page 20). I can see no relevance between an authorized wiretap in Miami, Florida, upon telephones allegedly used by Movants Martin Sklaroff and Jesse Sklaroff and the denial of an order authorizing a wiretap of Movant DePasquale's telephone in Nevada. The motion is denied.

All other motions for discovery and inspection not specifically mentioned in this opinion are overruled and denied. All motions for discovery and inspection which the Government has consented to furnish are granted.

### IV. *Motion for Disclosure of Names and Addresses of Confidential Informants Named in the Title III Application and in the Search Warrants*

The Government opposed this motion, with counsel stating both in its Response and orally in open Court that none of said informants were witnesses to, or present at the scene of, any of the alleged crimes charged in the indictment.

This motion has apparently been abandoned by Movants. During the hearing on October 16, 1970, in open Court, Attorney James J. Hogan conceded that under the foregoing representation, the ruling of the Supreme Court in Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, would not be applicable. Mr. Hogan represented four of the Movants and counsel for four others were present. Only Movant Hersch, who did not join in this motion, was unrepresented. His hearing was held later, on November 19, 1970. None of the other defense counsel took exception to Mr. Hogan's concession or argued in support of this motion.

■ Whether or not this motion was expressly abandoned by all Movants, it must fail. Movants have made no showing or contention whatever that these informants were active participants in the alleged crimes or were witnesses thereto and counsel for the Government has expressly stated that they were not. Under these circumstances, any reliance upon *Roviaro,* supra, is misplaced. See McCray v. Illinois, 1967, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; Rugendorf v. United States, 1964, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887; Lopez v. United States, 5 Cir. 1966, 370 F.2d 8; Lane v. United States, 5 Cir. 1963, 321 F.2d 573, cert. denied 377 U.S. 936, 84 S.Ct. 1340, 12 L.Ed.2d 299; Buford v. United States, 5 Cir. 1962, 308 F.2d 804; Firo v. United States, 5 Cir. 1965, 340 F.2d 597, cert. denied 381 U.S. 929, 85 S.Ct. 1568, 14 L.Ed.2d 687; C. F. Cooper v. California, 1967, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730.

The motion for disclosure of names and addresses of confidential informants is therefore overruled and denied as to all Movants making or joining in such motion. The Court notes that identical motions by Movants Martin Sklaroff and Jesse Sklaroff in the Northern District of Georgia indictment arising out of this same wiretap were likewise overruled and denied by Judge Edenfield.

### V. *Motions to Dismiss Indictment*

Movants have filed numerous and varied motions to dismiss the indictment. The Court will consider these under appropriate headings.

### A. *Alleged Failure of Indictment to State an Offense and Alleged Vagueness and Uncertainty of Allegations of Indictment.*

■ It does not appear to the Court that any Movant, except Hersch, is making a serious attack upon the sufficiency and definite nature of the allegations of this very detailed indictment. Movants Martin Sklaroff, Jesse Sklaroff, Jachman, and Gordon do not attack the indictment at all in this respect. Movants Blott, Richman, and William Sklaroff filed *pro forma* motions to dismiss on these grounds. However, they cite no authorities and do not specify a single instance wherein they claim an essential element of the crime is omitted or where the allegations are claimed to be vague

and indefinite. Neither did they argue this ground during the hearing. Movant DePasquale claims, without citing any authorities in support of his position, that the definitions of the "line" and "bottoms" contained in the indictment is too vague and ambiguous for him to respond intelligently, and that the allegation that he was engaged in the business of betting and wagering contained "no description which sets forth on what basis this conclusion was reached." (DePasquale Brief, Page 10).

With reference to the DePasquale contentions, the Court holds that the definitions of the "line" and "bottoms" as contained in each count of the indictment charging DePasquale where they appear are sufficiently definite to inform a reasonable person of the meaning of said terms and to enable him to avoid surprise, intelligently prepare his defense, and plead former jeopardy after conviction or acquittal. The "line" is defined as "the betting odds on a number of major league professional baseball games scheduled to be played later on that date." The term "bottoms" is described in Count 19 charging DePasquale as a defendant as "the amount of money then owed between Martin Sklaroff and Jesse Sklaroff on the one hand, and an unknown person referred to as 'Big Robert' and 'the Fat Man' on the other hand, as a consequence of prior bets and wagers on sporting events and contests which had already been played and contested and the results of which were then known, said 'bottoms' being '18332' ". It is difficult to envision a more comprehensive definition of these terms. Further, each count involving DePasquale clearly charges that he was "engaged in the business of betting and wagering." This is a factual allegation and not a conclusion as contended by DePasquale. It is not necessary that the "basis" for this allegation be set out further in the indictment, for this is a matter of evidentiary proof upon the trial. The instant indictment is unusually detailed for one drawn under 18 U.S.C. § 1084. Compare Nolan v. United States, 5 Cir. 1968, 395 F.2d 283, where an indictment couched in far broader and more general language under the same section, although criticized by the Fifth Circuit Court of Appeals, was yet held not to be so vague as to fail to charge an offense. Compared to the indictment in Nolan, the instant indictment is a model of particularity. All motions to dismiss on the grounds of vagueness and failure to state an offense are overruled and denied. The motion to dismiss of Movant Hersch, resting upon a different basis applicable only to him, will be discussed in a subsequent section of this order.

B. *Alleged Denial of the Right to a Speedy Trial.*

█ The Court finds no merit whatever to this ground. The right to a speedy trial does not arise until a formal complaint has been lodged against the defendant. Benson v. United States, 9 Cir. 1968, 402 F.2d 576. The formal complaint in this case was the return of the instant indictment on March 25, 1970. The Movants were arraigned with reasonable promptness and all except Hersch requested and were granted 60 days in which to file pre-trial motions. The United States was granted a like time to respond. The case was set for jury trial on November 30, 1970, with a hearing on the pre-trial motions conducted on October 15-16, 1970. Movant Hersch's hearing was conducted on November 19, 1970 because of inability of his counsel to be present on October 15. On the latter date the Court also conducted a hearing on a motion for continuance by Movants William Sklaroff and Richman, on the grounds that their counsel was then engaged in a trial in Federal District Court in New York City which would not be terminated by November 30.

Counsel for the United States stated in open Court that he was ready for the trial on November 30 and was most anxious to proceed against all nine Movants. He pointed out that granting a continuance as to those two Movants would necessitate a second jury trial

which would be largely repetitious as to the Counts in which these two Movants were named.

James J. Hogan, Esq., was present representing E. David Rosen, Esq., counsel for those two Movants. He also represents Movants Martin Sklaroff, Jesse Sklaroff, Jachman, and Gordon. During discussions in open Court of a possible future trial date for all nine defendants, Mr. Hogan stated in essence that since none of the defendants were in jail, there was no reason why the entire jury trial could not be continued to a future date. In the Court's view, this amounts to an abandonment of the "speedy trial" issue on the part of those six Movants. Movant Hersch's counsel, who has never raised the "speedy trial" issue, was present and did not object to a continuance on behalf of his client.

 This leaves only Movants Blott and DePasquale who have not abandoned their "speedy trial" issue. Neither of them has made the slightest showing of prejudice amounting to a denial of due process because of the alleged delay in bringing them to trial. Such a showing is necessary, before relief can be granted. Ross v. United States, 1965, 121 U.S.App.D.C. 233, 349 F.2d 210; United States v. Deloney, 7 Cir. 1968, 389 F.2d 324, cert. denied 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 417; United States v. Curry, N.D.Ill.1967, 278 F. Supp. 508; Benson v. United States, supra. They have filed no demand for speedy trial. Neither have they excepted to the order of this Court re-setting this case for jury trial as to all nine defendants on April 27, 1971.

 Some Movants complain of the delay of some nine months between the wiretaps of June 19–24, 1969, the searches and seizures of July 3, 1969, and the return of the indictment on March 25, 1970. The records and files of this case show clearly that such delay was in large measure directly caused by certain of the Movants. By filing civil actions in August, 1969, in this District and in the Northern District of Georgia seeking to suppress from presentation to any Grand Jury the intercepted communications and the evidence derived therefrom, they not only created the necessity for extensive evidentiary hearings and legal research and briefs, but they effectively blocked any Grand Jury presentation by Government counsel until after the respective District Courts had ruled adversely to Movants. Than they immediately filed notices of appeal to the Fifth Circuit Court of Appeals, which required full briefing on the merits as well as on the Government's motions to dismiss the appeals.

 The Court therefore finds that the instant indictment was returned within a reasonable period of time after the alleged commission of the offenses, in view of the extensive pre-indictment litigation initiated by certain of the Movants and by their co-defendant Elmer Dudley in the Atlanta, Georgia, indictment. It was returned some nine months after the wiretaps were authorized, which is well within the statute of limitations. Delay between the time of the offense, where there have been no arrests—the instant situation—and the initiation of prosecution is governed by the statute of limitations, United States v. Navarre, E.D.La.1969, 310 F.Supp. 521, and not by Rule 48(b), F.R.Crim.P., and the Sixth Amendment. The motions to dismiss the indictment on this ground are overruled and denied.

C. *Fact that Grand Jury Proceedings Were Not Reported.*

Movants originally moved that the Grand Jury minutes be transcribed. The Government responded that the Grand Jury proceedings were not reported and therefore could not be transcribed. Certain Movants then filed supplemental motions to dismiss the indictment because of the failure to have the Grand Jury proceedings reported.

 There is no mandatory requirement that Grand Jury minutes be recorded or transcribed. Jack v. United States, 9 Cir. 1969, 409 F.2d 522; United States v. Caruso, 2 Cir. 1966, 358 F.2d 184, cert.

denied 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88; United States v. Cianchetti, 2 Cir. 1963, 315 F.2d 584; Loux v. United States, 9 Cir. 1968, 389 F.2d 911, cert. denied 393 U.S. 867, 89 S.Ct. 151, 21 L. Ed.2d 135; Wyatt v. United States, 10 Cir. 1968, 388 F.2d 395. Counsel for Movants have cited no case holding that failure to record Grand Jury minutes requires dismissal of the indictment.

Since the Grand Jury minutes in the instant case were not reported, this Court cannot order them transcribed. That motion and the motion to dismiss the indictment because such minutes were not recorded are overruled and denied as to all Movants making or adopting such motions, whether directed to the entire indictment or only to those counts in which they are charged.

**D.** *Allegation that Indictment was Based Solely on Hearsay when Better Evidence was Readily Available.*

There has been a total failure of proof to support this allegation by Movants. During the evidentiary hearing and prior thereto, Movants made no attempt whatever to ascertain or prove the scope and nature of the evidence presented to the Grand Jury which returned this indictment, either by examining Government witnesses who testified before the Grand Jury or by examination of the Grand Jurors. The Government denied this allegation in its Response, thereby forming an issue which the Movants had the burden of sustaining. They did not carry this burden.

 Even had there been evidence that the indictment was returned on hearsay evidence, dismissal of the indictment would not be required. A defendant in a criminal case in Federal Court may be required to stand trial and his conviction may be sustained where only hearsay evidence was presented to the Grand Jury which indicted him, if the indictment is valid on its face and was returned by a legally constituted Grand Jury. Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L. Ed. 397; Jack v. United States, supra;

Wood v. United States, 9 Cir. 1969, 405 F.2d 423, cert. denied 395 U.S. 912, 89 S.Ct. 1756, 23 L.Ed.2d 224; Johnson v. United States, 9 Cir. 1968, 404 F.2d 1069, cert. denied 395 U.S. 912, 89 S.Ct. 1761, 23 L.Ed.2d 224; United States v. Leibowitz, 2 Cir. 1969, 420 F.2d 39. This motion is therefore overruled and denied as to all Movants making or adopting such motion, whether directed to the entire indictment or only to those counts in which they are charged.

**E.** *Alleged Unconstitutionality of Title III.*

● Pursuant to my ruling in Part II of this order, that Title III is constitutional on its face in all respects, all motions to dismiss the indictment or specified counts therein on this ground are overruled and denied as to all Movants making or adopting such motion.

**F.** *Contention by Movant Hersch that this Court Lacks Venue With Reference to Him under Allegations of Indictment.*

Briefly stated, Movant Hersch contends that because the counts in which he is charged as a defendant do not charge him with actual participation in the alleged long-distance, interstate telephone calls, he is "triable only as an accessory" and can be tried "only in the district where the accessorial acts took place," which would be the Northern District of Ohio. Therefore, he contends that this Court lacks jurisdiction to try him. He further argues that because no actual participation in these telephone conversations as a speaker is charged to him, the indictment fails to state an offense as to him.

An examination of the five counts in which Hersch is named as a defendant reveals that each count charges in pertinent part that Hersch and three other defendants on specified dates "each being engaged in the business of betting and wagering, did, *aiding and abetting each other*, in the Southern District of Florida and the Northern District of Ohio, knowingly, willfully, and unlawfully use and *cause to be used*" the described tele-

phone facilities for the interstate transmission of the alleged gambling information which is spelled out in detail further on in each count.

 The Court holds that Movant Hersch's motion is without merit. He is not charged as an accessory but as a principal, under 18 U.S.C. § 2. Further, 18 U.S.C. § 3237 provides that any offense begun in one district and completed in another may be prosecuted in any district where the offense was begun, continued or completed. That 18 U.S.C. § 1084 is such a continuing offense was held in United States v. Synodinos, D. Utah, 1963, 218 F.Supp. 479. Both the receiver and the transmitter of wagering information by interstate wire facilities are guilty of violating said section Sagansky v. United States, 1 Cir. 1966, 358 F.2d 195, cert. denied 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55. And, finally, the word "use" in 18 U.S.C. § 1084 is not limited to physical use by the defendant. On the contrary, one may "use" the facility through another. United States v. Kelley, S.D.N.Y.1966, 254 F. Supp. 9.

Each of the counts involving Hersch charge specific interstate gambling conversations between Defendant Blott in the Northern District of Ohio and other defendants in this District. Two of the counts allege that Blott participated in the conversations over a telephone located in Hersch's apartment. There is no doubt that venue exists in this District to try Defendant Blott under those allegations. And if Movant Hersch either "aided and abetted" or "caused" Blott or the Miami, Florida, participants to use the wire facilities illegally as alleged, he would be chargeable as a principal in either the Florida or the Ohio District Courts.

See United States v. Gillette, 2 Cir. 1951, 189 F.2d 449, cert. denied 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625, which refutes Hersch's theory of accessorial acts being triable only in the venue where the acts took place, as applied to Federal offenses. This motion is overruled and denied as to Movant Hersch.

G. *Miscellaneous Motions to Dismiss Indictment.*

The Court has considered all other motions to dismiss the indictment or certain counts thereof not specifically discussed in this order and finds them to be without merit. Therefore all motions by all Movants to dismiss the indictment or any count thereof are overruled and denied.

VI. *Motions for Bills of Particulars*

The Court, after due consideration of these motions for bills of particulars, finds that they constitute in the main "fishing expeditions" to ferret out the details of the Government's evidence and its legal theories. As previously stated, each count of the indictment is very detailed and specific. In addition, Government counsel have already furnished copies of or made available for Movants' inspection voluminous documents, tapes, transcripts, photographs, moving pictures, physical evidence, and statements allegedly made by Movants to F.B.I. Agents in their possession which they intend to offer in evidence in the trial. They have also advised Movants of the general nature of documentary evidence to be subpoenaed from third parties and used in the trial.

 In view of the extensive discovery acquiesced in by the Government and the detailed nature of the indictment, I am of the opinion that Movants have been adequately informed of the charges against them so they can prepare their defense, avoid surprise, and be enabled to plead their convictions or acquittals in the event of a possible future prosecution for the same offense. This is the only function of a bill of particulars. Wong Tai v. United States, 1927, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; United States v. Klein, S.D.N.Y.1954, 124 F.Supp. 476, aff'd 2 Cir. 1957, 247 F.2d 908, cert. denied 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354. A bill of particulars is not a device by which defendants may compel full disclosure of the Government's evidence prior to trial. United States v. Lebron, 2 Cir. 1955, 222 F.2d 531, cert. denied 350 U.S. 876, 76

S.Ct. 121, 100 L.Ed. 774. Nor is an inquiry into the Government's legal theory a proper purpose for a bill of particulars. United States v. Verra, S.D.N.Y.1962, 203 F.Supp. 87; United States v. Fruehauf, S.D.N.Y.1961, 196 F.Supp. 198.

 Finally, a bill of particulars should not be granted where the details sought would unduly restrict the Government, which is confined to the particulars furnished in presenting its proof at trial. Braatelien v. United States, 8 Cir. 1945, 147 F.2d 888; United States v. Wexler, S.D.N.Y.1933, 6 F.Supp. 258, aff'd 2 Cir. 1935, 79 F.2d 526, cert. denied 297 U.S. 703, 56 S.Ct. 384, 80 L.Ed. 991. It appearing to the Court that the particulars demanded might have that effect and that they are unnecessary in this case, all motions for bills of particulars are overruled and denied.

VII. *Motions to Suppress Statements and Motions to Suppress Evidence.*

These motions were either filed or adopted by all Movants except Hersch. For the most part, they involve the same contentions made before Judge W. O. Mehrtens in the premature civil action to suppress discussed earlier in this order.

In its Response, the Government incorporated by reference all the pleadings, testimony, statements in judicio, and memoranda of law in the prior civil action, No. 69–4–Misc–Civil, in this Court, except those pertaining to the premature nature of the motion which is now moot. In the hearing in open Court before me, Movants, with the exception of Hersch, physically introduced the entire record of that proceeding into evidence for the purpose of their new motions to suppress, without objection from Government counsel. Thus it seems clear that, by consent of both sides, all of the proceedings before Judge Mehrtens are again before me for consideration.

It would serve little purpose for this Court to summarize the evidence and the law relative to the proceedings before Judge Mehrtens, as I find that I am in complete agreement with his opinion and order, which I hereby adopt and incorporate into this Order. The motions to suppress as to all contentions raised before Judge Mehrtens and raised again after indictment before me are overruled and denied as to Movants Martin Sklaroff, Jesse Sklaroff, William Sklaroff, Edward Richman, Phillip Blott, Joseph Jachman, Henry Gordon, and John Michael DePasquale. No motion to suppress has been filed or adopted by Movant Hersch. In so ruling, I have considered the evidence adduced before Judge Mehrtens as well as that adduced before me, as to those Movants who were not parties to the original civil action.

 Some issues are before me which were not before Judge Mehrtens. I hold that his amendment *nunc pro tunc* of the order of authorization to intercept to add the date of issuance which had been inadvertently left incomplete was a proper correction of a clerical omission. United States v. Matellian, D. Mass.1962, 31 F.R.D. 233; United States v. Hertel Athletic and Social Club, Inc., W.D.N.Y.1928, 25 F.2d 872; Rule 36, F.R.Crim.P. See also the opinion of Judge Smith in Dudley v. United States, 320 F.Supp. 456 (N.D.Ga.1970) in which he held that the *nunc pro tunc* order of Judge Mehrtens "effectively corrected" any deficiency in the order of authorization, and the order of Judge Edenfield in United States v. Dudley, Indictment No. 26,335, N.D.Ga.1970 (unreported) in which he accepted the opinion of Judge Smith.

In the evidentiary hearing before me, Movants called F.B.I. Agents in an attempt to establish their contention that the order of Judge Mehrtens authorizing the wiretap was not executed in accordance with the order in two respects. First, they contend that private conversations unrelated to gambling were listened to and recorded, and secondly, that the objectives of the wiretap had been obtained earlier than the final day, June 24, 1969, and it should have been terminated earlier in compliancce with the order.

This Court rejects these contentions. F.B.I. Agent Grogan testified to an analysis he had made of the transcript of the six-day interception and the monitoring logs of the Agents involved. This showed that 324 calls were overheard from the pay telephones being wiretapped under the order. Of these, 32 were non-subject calls (made by persons other than Martin Sklaroff and Jesse Sklaroff) which were not recorded. One personal call was not recorded, two were partially recorded, and six were completely recorded. The remainder of the recorded calls related to gambling in some way. Of those personal calls which he recorded, his reason for doing so was that he was waiting to see if the conversation got around to gambling information. On one occasion it was ascertained that the subject was talking to his lawyer and both recording and monitoring was discontinued.

Under these facts, the Court finds that the interceptions were conducted in compliance with Judge Mehrtens' order that the interceptions "be conducted in such a way as to *minimize* the interception of communications that are otherwise not subject to interception under Chapter 119, Title 18, United States Code." (emphasis added.) The evidence showed that a minimal number of personal calls were intercepted.

With reference to the attainment of the authorized objective, Agent Grogan testified that on the second day of the wiretap, one new number and one new city (by "new" was meant a number or city not previously called from the inception of the wiretap) was called by the Sklaroffs. On the third day, three new numbers were called; on the fourth day, two new numbers and one new city were called; on the fifth day, one new number was called; and on the sixth day, three new numbers were called. This analysis corroborates the earlier testimony of the supervising Justice Department attorney before Judge Mehrtens that up until the last day, he was receiving information about new matters, that different numbers were coming up on different days, and that at the end of six days he and the Agents were just beginning to see the pattern that the Sklaroffs were using.

Upon the foregoing evidence, I find no merit to Movants' contention that the wiretap should have been terminated earlier.

One issue not decided by Judge Mehrtens was whether June 24, 1969 was within the seven-day period authorized for the wiretap. The evidence before him was uncontradicted that he signed the order of authorization around 5:30 p. m. on June 17, 1969. The wiretap equipment was installed on the night of June 18 around 9:00 p. m., but the tape recorders were not installed until 9:30 a. m. on June 19. The wiretap was discontinued at 2:00 p. m. on June 24. The authorized duration of the wiretap as stated in Judge Mehrtens' order was "seven days from the date of this order."

I am of the opinion that this question is governed by Rule 45, F.R.Crim.P., which states in pertinent part that "in computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included." The day the order was signed, June 17, was clearly the day of the act from which the seven-day period of time began to run. It is not included. Therefore, June 18 was the first day of the period and June 24 was the seventh day. For a comparable factual situation see United States v. Isabella, 2 Cir. 1958, 251 F.2d 223, where the defendant was sentenced on May 1, 1957, but did not file his notice of appeal until May 13, 1957. The Second Circuit said in stating the case:

> "The notice of appeal, however, *which should have been filed on the tenth day after sentence, or on May 11, 1957* at the latest was not filed * * * until Monday, May 13, 1957." (emphasis added)

Thus in *Isabella*, May 1, the date of sentencing, was not included in the ten-day period. May 2 was the first day

and May 11 was the tenth day. C.F. United States v. Robinson, 1960, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259, and Berman v. United States, 1964, 378 U.S. 530, 84 S.Ct. 1895, 12 L.Ed.2d 1012.

Even if the word "days" were construed not to mean calendar days, but rather to mean increments of 24 hours from the time of the signing of the order, the interceptions were terminated within the prescribed period. The order having been signed at 5:30 p. m. on June 17, 1969, the Agents could have continued interceptions for seven 24-hour periods until 5:30 p. m. on June 24. They actually terminated the wiretap at 2:30 p. m. on June 24, according to the uncontradicted evidence before Judge Mehrtens.

The Court therefore holds that the F. B.I. Agents executed the order of authorization to intercept in conformity to all of its provisions and that the interceptions of June 24, 1969, were authorized by the order.

The Court has considered all other grounds urged by Movants in their motions to suppress statements and evidence and finds them to be without merit. All such motions are therefore overruled and denied as to all Movants making or adopting such motions. The supplemental motion to suppress of William Sklaroff will be considered in more detail in the next section of this order.

VIII. *Supplemental Motion to Suppress of William Sklaroff*

On September 14, 1970, Movant William Sklaroff filed a supplemental motion to suppress evidence seized at his premises in Synceta (actually Wyncote), Pennsylvania, on the grounds that the affidavit for search warrant and the search warrant were inconsistent in the description of the premises to be searched. Copies of the search warrant and affidavit were attached to the motion.

On October 13, 1970 the written Response by the United States, on information and belief, set forth certain facts concerning the discrepancy and argued that as a matter of law the search and seizure of Movant William Sklaroff's apartment was nevertheless lawful. The United States requested to be allowed to introduce evidence as to those facts.

In the evidentiary hearing before me on October 16, 1970, this motion was handled very informally by counsel for both sides. David Rosen, Esq., counsel for Movant William Sklaroff, stated that he would stipulate the accuracy of the facts in the Response of the United States and allow this Court to pass on the questions of law posed by those facts. J. Robert Sparks, counsel for the United States, then stated that he had discovered the previous day through his first personal interview with F.B.I. Agents from Philadelphia, Pennsylvania, that some of the facts alleged in his Response were incorrect. He said he had obtained those facts "second hand" from the Miami, Florida, F.B.I. Office. He then orally amended his written Response in some factual averments and stated that the remaining portions of the Response were correct.

Mr. Rosen then called Special Agent William C. Murphy, II for brief examination and Mr. Sparks conducted an equally brief cross-examination. The testimony of Special Agent J. Robert Pearce was then orally stipulated by Mr. Sparks and Mr. Rosen. The original search warrant and original affidavit involved in the search of Movant William Sklaroff's apartment was introduced in evidence by the United States for purposes of the motion, without objection by Mr. Rosen.

Based upon the foregoing, I make the following:

FINDINGS OF FACT

The original search warrant and the original probable cause affidavit are unaltered. Each contains the following typewritten description of the premises to be searched:

"On the premises known as Cedarbrook Hills Apartments, Building Number 3, Apartment 310, corner of Greenwood Avenue and Limekiln Pike, Wyncote, Pennsylvania. Apart-

ment 310 at the named premises is located on the second floor of Building Number 3 and bears the numbers '310' on the door to the apartment."

Prior to issuance of the search warrant on July 3, 1969, based on the affidavit of Special Agent Murphy, he had been on the *third* floor of said Building Number 3 and observed the door bearing the Numerals 310, although he had not seen Movant William Sklaroff enter or leave that apartment. He knew that Apartment 310 was located on the *third* floor of that building at that address.

The search warrant and affidavit was typed in the Philadelphia F.B.I. Office. Through some stenographic or clerical error that Agent Murphy did not notice, Apartment 310 was described as being on the *second* floor of Building Number 3. A United States Commissioner issued the search warrant to Agent Murphy on July 3, 1969. After issuance, at the F.B.I. Office in Philadelphia and before execution, the error in floor number was detected. There was insufficient time to return to the Commissioner's Office to correct the description, since simultaneous raids (search warrant executions) were scheduled by the F.B.I. in a number of cities at noon of that day. Therefore, Special Agent Pearce altered the *copy* of the search warrant which was to be left at the premises searched by scratching out the typed word "second" and writing in by hand the word "third." No alteration was made on the copy of the affidavit. The original search warrant and the original affidavit were not altered.

Upon arriving at the apartment complex, Agent Murphy exhibited to the manager the search warrant for Apartment 310 in Building Number 3 and another search warrant for Apartment 715 in Building Number 2 (the apartment of Movant Richman) and requested the keys to those two apartments. The manager handed him a key saying that Apartment 310 had only one lock on it. He handed Agent Murphy two keys, saying that Apartment 715 had two locks upon it.

Agent Murphy left the manager's office and handed Agent Pearce the single key for Apartment 310. Agent Pearce went to the third floor of Building Number 3, located the apartment bearing the Numerals 310 on the door without difficulty (he had never seen the apartment door before) and, there being no occupant in the apartment, unlocked the door to Apartment 310 with the key given him by Agent Murphy at 12:03 p. m., entered and commenced the search. Agent Murphy did not participate in that search, but instead searched Apartment 715.

Approximately twenty-five minutes later, while the search was in progress, Movant William Sklaroff unlocked the door of Apartment 310 and entered.

There was no other apartment in Building Number 3 on July 3, 1969 bearing the Numerals 310 on the door except the one searched by the F.B.I. That apartment building was not occupied by tenants above the third floor. All floors above the third were in the final stages of construction and finishing. The description of the premises in the search warrant and affidavit was otherwise correct except for the error describing Apartment 310 as being on the second, rather than the third, floor of Building Number 3. The Agents found in the apartment two telephones bearing the same numbers alleged in the affidavit.

CONCLUSIONS OF LAW

The Fourth Amendment to the Constitution of the United States provides, in pertinent part, that "no Warrants shall issue, but upon probable cause * * * particularly describing the place to be searched * * *" Thus, where a search warrant describes one premises and officers search another, a motion to suppress the evidence seized must be sustained. See United States v. Kenney D.C.D.C.1958, 164 F.Supp. 891, where the search war-

rant and affidavit described the premises to be searched as "2144–8th St., N.W." and the police searched "2124–8th St., N.W." See also United States v. Sands, W.D.Wash.1926, 14 F.2d 670, where the search warrant described the premises as "2310½ Seventh Avenue, premises of John Doe Anderson and Mrs. J. Anderson." There was no such address as "2310½ Seventh Avenue" and the premises searched was a private residence not occupied by the Andersons. Motions to suppress were sustained in both these cases.

However, it does not follow that in every case where there is a minor error *in a portion of* the description of the premises to be searched that an otherwise lawful search warrant must be held unlawful. The controlling test set forth by the Supreme Court in Steele v. United States, 1925, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 is that:

> "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." (267 U.S. at 503, 45 S.Ct. at 416)

Search warrants with errors in a portion of the description of the premises to be searched have been upheld in a number of cases, to wit:

(1) United States v. Contee, D.C.D.C. 1959, 170 F.Supp. 26. Here the search warrant described the premises as "entire Apt. A" at a specified address and the apartment searched was a basement apartment at the correct address but was not designated "Apt. A". The motion was denied.

(2) United States v. Joseph, E.D.Pa. 1959, 174 F.Supp. 539, aff'd 278 F.2d 504, cert. denied 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52. In this case the description in the search warrant was "209 Court Terrace", the address searched was "209 Minersville Street", but the evidence showed that Court Terrace was in fact a continuation of Minersville Street. The motion was denied.

(3) United States v. Pisano, S.D. N.Y.1961, 191 F.Supp. 861. In this case the description in the search warrant was "a grocery store known as Esta's located on the ground floor of a building at *129* West Third Street, Mount Vernon, New York" but the correct address was actually *109* West Third Street. Here the Court held, in denying the motion, that "the minor error in the middle digit of the building number fades into insignificance when held against the light of the other distinguishing details."

(4) United States v. Goodman, N.D. Ind.1970, 312 F.Supp. 556. Here the description in the search warrant was "the room on the first floor level at the front of a two-story building located at *517* Conkey Street, Hammond, Indiana," and the premises searched was actually *579* Conkey Street. The Court noted that the description in the probable cause affidavit described the premises as being "the room located immediately next door to Marty's Tap." In denying this motion to suppress, the Court noted that no mistake in the building to be searched could have been made because "no building or room on the block displays the number 517" and the reference in the affidavit to Marty's Tap "unmistakably locates the premises to be searched."

(5) Hanger v. United States, 8 Cir. 1968, 398 F.2d 91, cert. denied 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124. In this case, the description in the search warrant was "the premises known as and numbered *1419* and 1421 North Park, in the City of St. Louis, Missouri, being a two-story building of brick and masonry construction and consisting of two family dwelling units immediately adjacent to each other and connected with each other by an entryway" but one of the apartments searched was "*1419a*" not described in the warrant. The motion was denied because the number "1419a" did not appear on the entryway to the apartment building and the warrant correctly described the

dwellings, considering the numbers on the outside of the structure.

■ The foregoing decisions illustrate the principle that the determining factor is to whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description given is technically accurate in every detail but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant.

■ Applying these criteria to the instant case, I hold that the error in describing Apartment 310 as being on the second rather than the third floor of Building Number 3 was of such a minor nature as not to invalidate the search warrant. There was only one apartment in that building with the Numerals 310 on the door, and the F.B.I. Agents searched that apartment. There was little possibility under the facts of this case that an apartment not intended to be searched could have been searched through mistake. One Agent had already viewed the door to that apartment, although he did not take part in the search. The key to Apartment 310 given to the Agent by the manager unlocked the door.

■ The probable cause affidavit may supplement the description in the search warrant. Fry v. United States, 9 Cir. 1925, 9 F.2d 38, cert. denied 270 U.S. 646, 46 S.Ct. 347, 70 L.Ed. 778; Townsend v. United States, 5 Cir. 1958, 253 F.2d 461; United States v. Goodman, supra. The narrative portion of the affidavit stated that William Sklaroff had moved into this apartment on June 17, 1969, and that the two described telephones therein were listed to William Sklaroff and Nicholas Sklaroff. Thus, it is apparent that the apartment intended to be searched was one numbered 310 oc-cupied by William Sklaroff, and there can be no question that the correct apartment was located without difficulty by an Agent who had never been there before. Movant Sklaroff's entry with a key while the search was in progress establishes, *prima facie,* that he had at least some custody and control over the premises.

The Court holds that the detailed description of the premises to be searched would have been sufficiently specific if all reference to the floor upon which Apartment 310 was located had been omitted. Therefore, the incorrect designation of the floor was surplusage and can be disregarded. United States v. Contee, supra; United States v. Pisano, supra.

The supplemental motion to suppress of Movant William Sklaroff on this ground is therefore overruled and denied.

Provided, however, that since many of the Court's Findings of Fact are based upon oral amendment of the Response and oral stipulation of counsel, the Court wishes to be certain there is no disagreement as to the facts. Therefore, I will permit the Movant William Sklaroff to file a written motion for reconsideration of the Findings of Fact within thirty days from the date of this Order, if he contends that any of said Findings of Fact are not supported by the Record. Such motion shall specifically designate that Finding or those Findings which he contends are not supported by the Record. If such a motion is timely filed, the Court will require sworn testimony on such controverted facts at a convenient time during the jury trial, outside the presence of the jury and prior to any testimony or reference to the search or its results being admitted in the presence of the jury. After such testimony, if any, is taken, the Movant William Sklaroff may renew his motion to suppress if he so desires, and the Court will reconsider its ruling in light of the additional testimony.

IX. *Motions for Severance and Separate Trial*

These motions have been filed by Movants William Sklaroff, Richman, DePasquale, and Hersch. The grounds are generally similar. The Movants contend that they will be prejudiced by being tried jointly with Martin Sklaroff and Jesse Sklaroff who are named in all 23 counts of the indictment as defendants whereas those four Movants are only named in part of the counts. They contend that the magnitude of the activities of Martin Sklaroff and Jesse Sklaroff as alleged would prevent them from receiving a fair trial, if tried jointly with said Sklaroffs.

The Government strongly opposed these motions for severance, pointing out that each of the 23 counts involve conversations between Martin Sklaroff and Jesse Sklaroff in Miami, Florida, and other defendants outside the State of Florida, and therefore each such conversation will be evidence not only against the Miami-based Sklaroffs, but also against their respective co-defendants in each count; therefore, severance would result in multiple trials of the same charges or portions thereof and would needlessly burden the limited trial time of the Court. The United States insists that a joint trial can be held with complete fairness to all defendants under proper instructions and in only slightly more than twice the trial time it would require to try one defendant alone. Counsel for the United States point out a "host of technical difficulties" which would be created by a grant of separate trials, i. e., evidence introduced in the first trial must be withdrawn for introduction in the second trial, etc.

 In deciding this question, the desirability of disposing of the criminal charges against all defendants as expeditiously as possible and conserving the future trial time of the Court must be balanced against the right of each defendant to a fair and impartial trial. The joinder of these offenses and de-fendants is proper under Rule 8(b), F.R. Crim.P., because the indictment shows on its face that the defendants allegedly participated in the same acts and transactions and the same series of acts and transactions within a six-day period from June 19, 1969 through June 24, 1969. Indeed, no contention of misjoinder of offenses or of defendants has been raised by any Movant. Generally, persons jointly indicted should be tried together. Brown v. United States, 1966, 126 U.S.App.D.C. 134, 375 F.2d 310, cert. denied 388 U.S. 915, 87 S.Ct. 2133–2134, 18 L.Ed.2d 1359. The decision of whether to grant a severance is left to the discretion of the Trial Court. Leach v. United States, 5 Cir. 1969, 402 F.2d 268, cert. denied 393 U.S. 1082, 89 S.Ct. 864, 21 L.Ed.2d 775; Bostick v. United States, 5 Cir. 1968, 400 F.2d 449; cert. denied 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 712. The discretion vested in the Trial Court is wide. Long v. United States, 10 Cir. 1947, 160 F.2d 706; Fisher v. United States, 8 Cir. 1968, 324 F.2d 775, cert. denied 377 U.S. 999, 84 S.Ct. 1935, 12 L.Ed.2d 1049.

This Court does not feel that Movants have shown substantial reasons for severance. Boiled down, their only contention is that because defendants Martin Sklaroff and Jesse Sklaroff are named in all counts of the indictment, the evidence against them must be stronger than that against those Movants seeking a separate trial, and that consequently a jury would probably convict all defendants on the supposed strength of the evidence against those two defendants. This conclusion does not necessarily follow. Many reported cases involving multiple defendants tried jointly show that the juries convicted some defendants and acquitted others in the same trial.

 Substantial prejudice must be shown and not merely speculative assertions, before a separate trial should be granted. United States v. Johnson, N.D.Ill.1969, 298 F.Supp. 58; United States v. Barber, D.Del.1969, 296 F.Supp. 795. As the Eighth Circuit Court of Ap-

peals said in Hanger v. United States, supra:

> "The feature of certain evidence, being evidence against one defendant but not against another defendant is usually present in every joint trial. It is well settled that the fact that in a joint trial there will be evidence against one defendant which is not evidence against another defendant does not require separate trials." (398 F.2d at 100)

In accord: Rizzo v. United States, 8 Cir. 1962, 304 F.2d 810, cert. denied Nafie v. United States, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123; Costello v. United States, 8 Cir. 1958, 255 F.2d 389, cert. denied Cannella v. United States, 358 U.S. 830, 79 S.Ct. 51, 3 L.Ed.2d 69.

These Movants have neither alleged nor proven any substantial grounds for severance, such as a confession by one defendant implicating others, or hostility between the defendants which makes their defenses incompatible. I therefore conclude that with proper instructions from the Court to the trial jury to consider the exact offense charged and the evidence introduced thereon separately as to each of the defendants, these Movants, will not be prejudiced by a joint trial.

Movant DePasquale cites the case of DeLuna v. United States, 5 Cir. 1962, 308 F.2d 140, rehearing denied 324 F.2d 375, in which co-defendants charged with the narcotics violation were hostile to each other in a joint trial. DeLuna's co-defendant testified, placing all guilt on DeLuna, and the co-defendant's counsel commented several times on the failure of DeLuna to testify in his closing argument to the jury. DeLuna's conviction was reversed on appeal, one judge dissenting on rehearing.

The *DeLuna* case presents a very unusual factual situation which is wholly absent at this stage of the instant case. There had been absolutely no evidence or indication of hostility between co-defendants. On the contrary, there has been every indication of cooperation between counsel for defendants. They have adopted each other's motions for the most part (except Hersch, whose hearing was held on a later date than the hearings for the other eight Movants). During the hearing on October 15–16, 1970, defense counsel consulted frequently with each other. On one occasion, a short recess was requested and granted so that counsel for all Movants except Hersch could confer outside the courtroom. No Movant has stated either orally or in written form that he intends to testify, and wishes to comment on the failure of other defendants to testify. At this pre-trial stage, the Court is completely unadvised as to whether all, none, or some of Movants intend to testify.

In short, all Movants for severance have completely failed to allege or prove the special circumstances required to bring themselves within the *DeLuna* rule. I shall issue a pre-trial order, similar to the one approved in Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253, rehearing denied December 20, 1969, rehearing *en banc* denied January 7, and January 29, 1969, ordering and directing that all defendants who take the stand and testify in the jury trial and all counsel for those defendants shall refrain from commenting in any manner during the trial upon the fact that the other defendants did not take the stand and testify.

The motions for severance and separate trial are therefore overruled and denied.

### X. *Motions to Transfer Indictment or Counts to Other Districts for Trial*

Movants William Sklaroff and Richman move to transfer the indictment as to them to the Eastern District of Pennsylvania, "in the interest of justice" pursuant to Rule 21(b), F.R.Crim.P. The quoted words constitute the entire showing of those Movants in support of the motion. No factual reasons supporting this motion have been given this Court.

The importance of assuring good order in the management of judi-

**324**

cial business and the efficient handling of the prosecuting attorney's case load requires that the defendant demonstrate a substantial balance of inconvenience to himself if he is to succeed in nullifying the prosecuting attorney's choice of venue. United States v. Luros, N.D. Iowa 1965, 243 F.Supp. 160, cert. denied Luros v. Hanson, 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361. See also United States v. United States Steel Corporation, S.D.N.Y.1964, 233 F.Supp. 154; United States v. Cohen, N.D.Cal.1964, 35 F.R.D. 227; United States v. White, D.Neb.1951, 95 F.Supp. 544.

 Further, a defendant in a criminal case has no constitutional right to a trial in his home district. Platt, Chief Judge v. Minnesota Mining and Manufacturing Company, 1964, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674.

The motions to transfer the indictment or counts thereof are therefore overruled and denied as to those Movants specifically so moving and also as to those Movants who, by adopting motions of other defendants, might be considered by implication to have moved for transfer to their home districts where the indictment alleges they participated in the alleged offenses.

### XI. *Other Pre-Trial Motions*

Movants Martin Sklaroff and Jesse Sklaroff have requested this Court to consolidate for trial in this District an indictment pending against them and others in the Northern District of Georgia, pursuant to Rule 13, F.R.Crim.P., on the ground that the offenses and defendants could have been joined in the same indictment.

 This is such a novel motion that the Court can find no precedent on the point. However, it seems clear that this Court has no jurisdiction whatever over a Federal indictment returned in another district. I find no statutory authority whatever which would authorize me, even if I were so inclined, to order an indictment in Georgia consolidated for trial in this District. Rule 13 refers to

consolidation for trial of several indictments pending against the same defendant in the *same* district which are similar in nature and thus could have been indicted in several counts of one indictment, such as several bank robberies or Dyer Act cases. In order to accomplish the desired consolidation, Movants would have to request the District Court in Georgia, which has jurisdiction over the indictment and offenses in question, to transfer the indictment to this District under Rule 21, F.R.Crim.P. The Government having stated in its Response that this latter course has not been pursued in the Northern District of Georgia, and the Movants having failed to controvert that statement, the motion to consolidate is overruled and denied.

 All Movants except Hersch orally moved the Court during the pre-trial hearing to rule that, since Judge Mehrtens' order of authorization to intercept telephonic conversations of Martin Sklaroff and Jesse Sklaroff did not name any of the other Movants, intercepted conversations of all other Movants with those two Sklaroffs would be inadmissible against all Movants, other than the two Sklaroffs named in the order.

There appears to be no legal precedent on this issue, as this is one of the first litigated cases arising under Title III since its enactment in 1968. However, this Court declines to make such a ruling which would render Title III virtually worthless. It would mean that if a lawful order were obtained to wiretap the telephone of "A" to overhear conversations about a specified crime, and "A" subsequently had incriminating telephone conversations with "B", "C" and "D", who were either unknown to the officers or were not suspected of being implicated in the crime under investigation, such incriminating conversations and the evidence derived therefrom would be admissible against "A", but not against "B", "C", and "D". Thus only one of four possibly guilty parties could be prosecuted.

I do not believe that any such illogical and one-sided application of Title III was contemplated by Congress. This belief finds support in 18 U.S.C. § 2518(9) providing in part that the contents "of any intercepted wire or oral communication" may not be received in evidence "unless *each* party" has been furnished with a copy of the court order and application not less than ten days prior to trial. The use of the words "each party" and the use of "communication" in the singular strongly suggests that the intercepted communication may be received as evidence against all parties to one conversation if the requirements of the section are met. Further, 18 U.S.C. § 2518(4) (a) requires that an order of authorization to intercept specify "the identity of the person, *if known,* whose communications are to be intercepted." Thus, a lawful order could be issued for intercepting the communications of unknown parties.

Obviously, officers wishing to wiretap a telephone believed to be used by certain identified suspects cannot know the identity of all persons who may telephone, or be telephoned, by those suspects, and thus cannot specify the identity of such unknown parties in their application. To impose such a requirement would be to require the impossible.

I therefore hold as a matter of law that if a lawful court order of authorization to intercept wire communications of named persons is issued, and in the course of the authorized interception, conversations between the named person and other persons not named in the order are lawfully intercepted, the intercepted conversations of the unnamed persons and the evidence derived therefrom are admissible in evidence in a criminal trial against the unnamed persons, if otherwise relevant and material. The motion for a ruling to the contrary is overruled and denied.

All other pre-trial motions by defendants not specifically discussed in this Opinion and Order are overruled and denied.

Therefore, in conformity with the rulings made heretofore, it is ordered and adjudged, as to all Movants either making pretrial motions or adopting those made by others:

1. That Title III of the Omnibus Crime Control and Safe Streets Act is constitutional on its face and its application in this case likewise violated no constitutional amendment.

2. That the motions for discovery and inspection are sustained in part and denied in part.

3. That all motions for disclosure of the names and addresses of confidential informants named in the Title III Application are overruled and denied.

4. That all motions to dismiss the indictment or specified counts thereof are overruled and denied.

5. That all motions for bills of particulars are overruled and denied.

6. That all motions to suppress statements and all evidence derived therefrom, and to suppress evidence are overruled and denied.

7. That the Order of United States District Judge W. O. Mehrtens, dated September 2, 1969, in Case No. 69–4–Misc.–Civil, E.D.Fla.1969 (unreported) is adopted by this Court and incorporated in and made a part of this Order as to all Movants with the exception of Paragraph 8 of said judgment which is now moot and Paragraph 2 relating to the correction *nunc pro tunc* of the order of authorization to intercept communications.

8. That the correction *nunc pro tunc* on September 2, 1969, by Judge W. O. Mehrtens of the order of authorization to intercept communications issued by him on June 17, 1969 was a proper correction of a clerical omission of the date of issuance and effectively corrected any defi-

ciency in the order of authorization, under provisions of Rule 36, F.R.Crim.P.

9. That time did not begin to run on the aforesaid order of authorization to intercept communications issued June 17, 1969 until the day following the signing of the Order, pursuant to Rule 45(a), F.R.Crim.P., and therefore, interceptions on June 24, 1969, were authorized by said order.

10. That the order of authorization to intercept communications issued by Judge W. O. Mehrtens on June 17, 1969 was executed by Special Agents of the Federal Bureau of Investigation in accordance with the directions in said order.

11. That the supplemental motion to suppress of Movant William Sklaroff is overruled and denied.

12. That all motions for severance and separate trial are overruled and denied.

13. That all motions to transfer the indictment or specified counts thereof to other districts for trial are overruled and denied.

14. That the motion of Martin Sklaroff and Jesse Sklaroff to consolidate for trial in this district under Rule 13, F.R. Crim.P., an indictment returned in the Northern District of Georgia, is overruled and denied.

15. That all other pre-trial motions not specifically mentioned in this judgment are overruled and denied.

16. That all defendants in this case who may take the stand as witnesses and testify in their own behalf in the forthcoming jury trial now set for May 17, 1971, before me and the counsel for such defendants are forbidden to comment in any manner whatever during said trial in the presence of the jury upon the failure to take the stand and testify of those defendants who may elect not to testify in their own behalf.