**Eugene Anthony NOLAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 24016.**

United States Court of Appeals Fifth Circuit.

May 20, 1968.

---

Raymond W. Bergan, Vincent J. Fuller, Washington, D. C., for appellant.

Morton L. Susman, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for appellee.

Before JONES, WISDOM and DYER, Circuit Judges.

JONES, Circuit Judge:

The appellant, Eugene Anthony Nolan, was charged in the first count of an indictment with transmitting by telephone between Houston, Texas, and Baton Rouge, Louisiana, bets and wagers on football games and information assisting in the placing of bets and wagers,

in violation of 18 U.S.C.A. Sec. 1084.[1] By a second count of the indictment Nolan was accused of the interstate use of telephone facilities to carry on unlawful gambling business in violation of 18 U.S.C.A. Sec. 1952. He was convicted of the offense charged in the first count and acquitted of the offense charged in the second count of the indictment.

The appellant moved to dismiss the first count, asserting that it was duplicitous in charging more than one offense. At the same time he filed a motion to require the Government to elect between the two offenses which he contended were charged by the first count and by another motion sought particulars of the uses of the telephone. All of the motions were denied.

One of the principal witnesses against Nolan was Anthony Crappito who testified that he made a number of telephone calls from Houston, Texas, to a telephone in Baton Rouge, Louisiana, which was listed in Nolan's name at an apartment. In these telephone calls Crappito identified himself as "Doc from Houston," or so he testified. None of the calls were person to person calls to Nolan, and Crappito could not identify any person with whom he had talked during his telephone conversations with the Baton Rouge apartment. Crappito's testimony indicated that wagering information was obtained and bets were placed during these telephone conversations.

Nolan had made application on an Internal Revenue form for a gambling tax stamp under 26 U.S.C.A. Sec. 4411. He made monthly tax returns, pursuant to 26 U.S.C.A. Sec. 4401, showing gambling transactions. Nolan filed a motion to suppress these documents and the motion was denied. Nolan was given by the court a continuing objection to the introduction of these papers and to testimony concerning them. Notwithstanding his effort to have the documents suppressed and to have them excluded from evidence, they were introduced in evidence.

During the examination of Crappito he was at first unable to give the name of the boss of the Baton Rouge "book." He later gave the name as "Gene" but perhaps was aided by overhearing the word spoken by someone else in the courtroom. Nolan contended that the grand jury minutes would be in conflict with Crappito's oral testimony about "Gene," and further contended that, before the grand jury Crappito had said that he identified himself as "Doc" rather than "Doc from Houston." Application was made for inspection of the grand jury minutes and the use of them if they could be so used to impeach Crappito's testimony. A somewhat similar contention was made with respect to the testimony of the Government's witness Taylor. The court denied the use of the grand jury minutes at the trial.

In his argument to the jury, the prosecutor talked about "organized crime," referred to Nolan as a "racketeer" and depicted Nolan's defense as "devious, deceitful, duplicitous," and "otherwise untruthful" in his attempt to "trick, fool, and deceive" the jury.

On appeal, as in the district court, Nolan urges that names on the jury list from which the grand and petit jurors were selected were chosen in an unconstitutional manner. The source of the list from which the jurors were selected was made up primarily

---

1. "That from on or about September 13, 1961, and continuously thereafter until on or about November 21, 1963, Eugene Anthony Nolan, the defendant, being then and there engaged in the business of betting and wagering, did knowingly use a wire communication facility, that is, the telephone, and did knowingly and wilfully aid, abet, counsel, command, induce, procure and cause the use of a wire communication facility, that is, the telephone, for the transmission in interstate commerce between Baton Rouge, Louisiana, and Houston, Texas, in the Houston Division of the Southern District of Texas, of bets and wagers on sporting events and contests, that is, football games, and of information assisting in the placing of bets and wagers on sporting events and contests, that is football games. (Violation, Title 18, United States Code, Section 1084)"

from the names of registered voters. The deputy clerk stated that aside from the random selection from the voter list, she struck the names of those she believed the judge would excuse and she included the names of some persons who she thought would make good jurors. The fact that the list was compiled primarily from a list of registered voters does not show that the list did not reflect a fair cross section of the community. Thomas v. United States, 5th Cir. 1966, 370 F.2d 96, cert. den. 386 U.S. 975, 87 S.Ct. 1164, 18 L.Ed.2d 133. While it was, we think, improper for the deputy clerk to exclude those few whom she thought the courts would excuse and to include the names of a few who she thought would make good jurors, it does not appear that this deprived the list, as it was made up, of representing the fair cross section of the community which is necessary to meet constitutional requirements. The contention of the appellant that the jury list failed to comply with required standards cannot be sustained.

■■■ We think a much better indictment might have been drawn than that upon which Nolan was convicted but we do not think that it is duplicitous or that it was so vague as to fail to charge an offense. It could have been and we think it should have been supplemented by the particulars which Nolan sought. He now knows with the Government's evidence in the record the particulars of the Government's charge against him. In the event that there is another trial and he thinks it desirable to do so, Nolan is not precluded from again asking the Court to require the Government to specify the particulars of the offense. It may be noted that the denial of the particulars which he sought is not specified by Nolan on this appeal as error.

■■■ Nolan argues that it was error for the court to deny the production of grand jury testimony. The granting of an application for production of testimony before a grand jury is in large measure within the discretion of the trial court. In the exercise of this discretion the court should grant the application upon a showing of particularized need, especially where, as seems to be the case here, there is little need for maintaining secrecy. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973; Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323. In the event that this case should again be tried, the particularized need may be as great as on the first trial with much less need for preserving the secrecy of the testimony. These questions can be determined by the district court should the need for determination arise.

The Government prosecutor in his zeal to procure a conviction was something less than discreet in some of the language which he used. We need not decide whether his comments constituted reversible error since the case is being reviewed on another ground and we will not assume that there will be any recurrence in the use of the injudicious language.

■■ The Supreme Court had not decided at the time of the trial the question of whether it was error to admit testimony concerning the application of Nolan for a wagering tax stamp and the filing by him of returns showing his wagering income. Since the trial and since the submission of the appeal the Supreme Court of the United States decided on January 29, 1968, the cases of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 716, 19 L.Ed.2d 906, in which it was held that such evidence was inadmissible because of the Fifth Amendment privilege against self-incrimination. This testimony was, and was regarded by the Government as being, an extremely important part of its case. The admission of it constituted reversible error and the cause must be remanded. Whether or not the Government will retry Nolan is for it to determine. Should it do so, the question as to wheth-

er it has evidence to carry the case to a jury will be for the trial court to determine.

In order that there may be a new trial in the event the Government elects to retry the appellant, the sentence and judgment of the district court is reversed and the cause remanded for further proceedings.

Reversed and remanded.