UNITED STATES of America,
Plaintiff-Appellee,

v.

Eugene A. NOLAN, Defendant-Appellant.

No. 77-1545.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 29, 1977.

Decided Feb. 28, 1978.

Robert L. Weinberg, of Williams & Connolly, Washington, D. C. (Andrew L. Lipps, Washington, D. C., with him on brief), for defendant-appellant.

Kenneth P. Snoke, Asst. U. S. Atty., Tulsa, Okl. (Hubert A. Marlow, Acting U. S. Atty., Tulsa, Okl., with him on brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, SETH, Circuit Judge, and BRIMMER, Chief Judge.*

BRIMMER, Chief Judge.

The Petitioner-Appellant, Eugene A. Nolan, seeks review of the district court's order denying his motion to vacate sentence pursuant to 28 U.S.C. Section 2255. He was initially indicted in 1966 by a federal grand jury for the Northern District of Oklahoma. The two-count indictment charged Nolan with conspiracy to use interstate facilities for gambling purposes in violation of 18 U.S.C. Section 371 and the actual use of interstate facilities to carry on unlawful gambling business in violation of 18 U.S.C. Section 1952. He was tried and convicted in May of 1967 on both counts of the indictment, and sentenced to four years of imprisonment on each of the two counts, the sentences to run consecutively.

Prior to his trial and conviction, the Petitioner had submitted wagering tax forms and payments to the Internal Revenue Service in compliance with 26 U.S.C. Sections 4401, 4411 and 4412. These provisions were enacted for the purpose of taxing wagers. In conjunction with this statutory scheme the Appellant was issued a Federal Wagering Tax Stamp. At Petitioner's trial various references to the tax stamp were made. The primary reference to the stamp came from the Appellant's brother, Dr. Charles Nolan. He testified on both direct and cross-examination that one of his reasons for considering his brother a professional gambler was the Appellant's possession of a wagering tax stamp. Additionally, both counsel, on closing argument, referred to the testimony of Dr. Nolan. The court also devoted one sentence of its instructions to the tax stamp. Finally, the indictment, which listed the Appellant's holding of a wagering stamp as one of the overt acts under the conspiracy count, was read to the jury. All references to the tax stamp were made without the objection of Appellant's counsel.

The Petitioner appealed his conviction to this court, contending *inter alia* that the trial references to his possession of a Federal Wagering Tax Stamp violated his Fifth Amendment privilege against self-incrimination. The assertion was made in light of *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), holding that the federal statutory requirements to register and file gambling tax returns constituted compulsory self-incrimination, and that the assertion of the Fifth Amendment privilege would act as a complete defense to prosecutions for the failure to comply with 26 U.S.C. Sections 4401, 4411 and 4412 which were decided by the Supreme Court while Nolan's convictions were pending on appeal.

In *Nolan v. United States*, 423 F.2d 1031 (10th Cir. 1970), this court held that the references to the Appellant's tax stamp were sufficient to entitle him to claim the Fifth Amendment privilege, but, that the Petitioner had waived his claim to this privilege. We found that the Appellant's case was tried in the shadow of *Marchetti* and *Grosso*, and that both counsel were well aware of the availability of the privilege that was then being actively litigated. We observed that Appellant's counsel objected to the introduction into evidence of the tax stamp and tax filings of Nolan's alleged co-conspirator, based on the pending *Marchetti* and *Grosso* cases. It was, therefore, the opinion of this court that the failure to assert the privilege sometime during the trial "can be plausibly attributed to calculated trial strategy." *Nolan v. United States*, supra, at 1039.

Appellant has now brought this action pursuant to 28 U.S.C. Section 2255 request-

---

* Of the District of Wyoming, sitting by designation.

ing an order vacating his sentence because the Government's references to Nolan's possession of a Federal Wagering Tax Stamp at trial violated his Fifth Amendment privilege against self-incrimination. The District Court denied the Petitioner Section 2255 relief without holding an evidentiary hearing, holding that there had been no change in this circuit's view of the law of waiver and that the Appellant's motion was improper. The District Court concluded that should this court take a fresh look at the Petitioner's conviction, we would find that *Marchetti* and *Grosso* should not be retroactively applied to the case at bar.

On appeal Nolan contends that (1) this circuit has changed the law of waiver and that the Appellant is entitled to the benefit of that change; (2) *Marchetti* and *Grosso* are fully retroactive in application; and (3) an evidentiary hearing was required on the issue of waiver.

■ An issue disposed of on direct appeal will generally not be reconsidered on a collateral attack by a motion pursuant to 28 U.S.C. Section 2255. *Baca v. United States*, 383 F.2d 154 (10th Cir. 1967), cert. denied, 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994. However, a motion under Section 2255 may be proper when there has been an intervening change in the law of a circuit. *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), a selective service case, involved a defendant who was ordered to report for induction into the armed services and when he did not report, was prosecuted and convicted for failing to be inducted. The Ninth Circuit remanded the case for reconsideration in light of the Supreme Court decision in *Gutknecht v. United States*, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). The District Court upheld Davis' conviction and the Ninth Circuit affirmed. While the case was pending before the Supreme Court the Ninth Circuit decided *United States v. Fox*, 454 F.2d 593 which, based on *Gutknecht*, reversed a conviction on facts "virtually identical" to those on which Davis was convicted. After the Supreme Court denied certiorari in his case the defendant filed a Section 2255 mo-

tion which was denied by the District Court and affirmed on appeal. The Supreme Court reversed, holding that a Section 2255 proceeding was proper if "new law" has been made. *Davis v. United States*, supra, 417 U.S. at 342, 94 S.Ct. 2298.

■ The Appellant asserts that the case of *Martinez v. United States*, 464 F.2d 1289 (10th Cir. 1972), represents such a change in the law of waiver and that the "new law" should inure to his benefit. We do not agree, because the case at bar and *Martinez* are not virtually identical. The issue involved in *Martinez* was the validity of the defendant's convictions for violation of 26 U.S.C. Section 4744(a), a subsection of the Marihuana Tax Act. The Supreme Court, in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), held that an assertion of the Fifth Amendment privilege would act as a complete defense to any prosecution for violation of 26 U.S.C. Section 4744(a). This court in the *Martinez* case recognized the retroactivity of the *Leary* holding, even though no privilege had been asserted at trial.

Obviously the Appellant's case does not involve the Marihuana Tax Act as in *Leary* and *Martinez*, but rather is concerned with both conspiracy and actual use of interstate communication facilities to carry on an unlawful gambling business. A *Leary-Martinez-Marchetti-Nolan* analogy cannot be properly drawn because the Petitioner was prosecuted under different statutes, the validity of which is not questioned, than those affected by the *Marchetti* and *Grosso* decisions. A significant difference between *Martinez* and the Appellant's case is therefore reflected in the extent of the Fifth Amendment privilege recognized in each situation. A timely assertion of the Fifth Amendment privilege would have provided a complete defense to a *Martinez-Leary* type prosecution or a *Marchetti* prosecution for violation of 26 U.S.C. Section 4401, et seq. But, on the other hand, an assertion of that privilege by the Appellant would not have served as a complete defense to the 18 U.S.C. Section 371 and 18 U.S.C. Section 1952 charges against him. The Petitioner's

privilege would, at most, have operated only to exclude testimonial references to the tax stamp, amidst the other evidence on which the conviction was based. *Nolan v. United States*, 423 F.2d 1031 at 1041–1047 (10th Cir. 1970).

The Appellant urges that both the *Leary* and *Martinez* decisions support the contention that a defendant cannot waive a right unless it is a known right, and that the law of waiver as expressed in *Nolan v. United States*, 423 F.2d 1031 (10th Cir. 1970), has thereby been changed. It was our opinion at the time of Petitioner's initial appeal, and indeed it remains our opinion today, that the actions of Appellant or his counsel amounted to a knowledgeable waiver of the privilege against self-incrimination then being litigated in the *Marchetti* and *Grosso* cases. Both counsel were well aware of the two pending Supreme Court cases, as shown clearly by the objections of Appellant's counsel expressly predicated upon the pendency before the Supreme Court of the *Marchetti* and *Grosso* appeals, to the introduction of evidence of the stamp and tax filings of a co-defendant. That becomes even more apparent in *Nolan v. United States*, 395 F.2d 285 (5th Cir. 1968), which predated the Petitioner's conviction in this matter, and also concerned a 18 U.S.C. Section 1952 prosecution. This same Appellant there asserted several timely objections to the introduction of his tax filings into evidence, and had also moved to suppress them. *Nolan v. United States*, 395 F.2d at 286.

By contrast, in *Martinez v. United States*, supra, the issue was the validity of his 1956 and 1966 convictions for violation of 26 U.S.C. Section 4744(a) (a subsection of the Marihuana Tax Act) and the retroactivity of the 1969 decision in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. Assertion of the privilege against self-incrimination on the basis of *Leary* would have provided *Martinez* a complete defense, but here, as the trial judge observed, the privilege would only have rendered inadmissible the testimony referring to Nolan's wagering tax stamp. No knowledgeable waiver was involved in *Martinez*. The requisite similarity between *Martinez* and this

case does not exist. It is our opinion that *Martinez* did not change the law of waiver where there are circumstances such as those presented here.

■ The holdings of *Marchetti* and *Grosso* should not be made retroactive to this kind of a case. The retroactivity of *Marchetti* and *Grosso* was discussed by the Supreme Court in *United States v. U. S. Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), and *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971). In *U. S. Coin* the defendant, Angelini, had been convicted of failing to register as a gambler and pay the related taxes in violation of 26 U.S.C. Sections 4111 and 4112. The government initiated a forfeiture proceedings in order to seize money which Angelini had in his possession at the time of his arrest, and which was being used in a bookmaking operation in violation of the Wagering Tax statutes. The Supreme Court recognized the retroactive application of *Marchetti* and *Grosso* because the forfeiture proceeding would impose a penalty for conduct which is "constitutionally immune from punishment." *United States v. U. S. Coin & Currency*, supra 401 U.S. at 724, 91 S.Ct. 1041.

In *Mackey*, the defendant had been convicted of income tax evasion. At trial, the government introduced into evidence the wagering tax returns he had filed pursuant to 26 U.S.C. Section 4401. The defendant then filed a Section 2255 motion based on the subsequent *Marchetti* and *Grosso* decisions. The Supreme Court did not apply those cases retroactively, however, since there was no danger that the evidence relied on for the defendant's conviction had the potential unreliability of coerced confessions.

The differing results in *Mackey* and *U. S. Coin* are best explained by excerpts from the two cases:

> Mackey is not asserting that the conduct for which he is being punished, evading payment of his federal income taxes, has been held to be constitutionally immune from punishment. In this regard,

Mackey's claim differs from that raised by respondent in *Coin & Currency*, also decided today, where *Marchetti* and *Grosso* do operate to render Congress powerless to punish the conduct there at issue. Instead, Mackey's claim is that the procedures utilized in procuring his conviction were vitiated by the *Marchetti* and *Grosso* decisions. (*Mackey v. United States*, 401 U.S. at 700–701, 91 S.Ct. at 1184.) But, in *U. S. Coin*, the Court stated:

> Unlike some of our earlier retroactivity decisions, we are not here concerned with the implementation of a procedural rule which does not undermine the basic fact finding process at trial, [citations omitted]. Rather, *Marchetti* and *Grosso* dealt with the kind of conduct that cannot constitutionally be punished in the first instance. These cases held that gamblers in Angelini's position had the Fifth Amendment right to remain silent in the face of the statute's command that they submit reports which could incriminate them. In the absence of a waiver of that right, such persons could not properly be prosecuted at all. (401 U.S. at 723, 91 S.Ct. at 1045.)

In *Romanelli v. Commissioner of Internal Revenue*, 466 F.2d 872, 877 (7th Cir. 1972), a case involving income tax deficiencies, the Seventh Circuit also addressed itself to the holdings of *U. S. Coin* and *Mackey*:

> In *United States Coin & Currency*, supra, the conduct penalized (by forfeiture) was the refusal to incriminate oneself by registering. Since the Court had held in *Marchetti* and *Grosso* that that conduct could not be validly punished, the retroactivity of those decisions was not limited. In *Mackey v. United States*, supra, the conduct actually punished was evasion of taxes, and the use of the information which Mackey had supplied did not undermine the accuracy of the fact-finding process.

The Appellant's case, like *Mackey* and *Romanelli*, does not involve conduct which is immune from punishment. Petitioner is concerned with a procedural right which does not undermine the factfinding process.

Absent conduct constitutionally immune from punishment, retroactive application of *Marchetti* and *Grosso* is inappropriate.

The Appellant cites numerous cases which support the retroactivity of *Marchetti* and *Grosso*. (Aplt's Br., 17–18). Those cases mostly deal with prosecutions for violation of the Wagering Tax Statutes. The one decision cited by Petitioner which appears to give retroactive effect to a *Mackey* -type conviction is *Nolan v. United States*, 395 F.2d 283 (5th Cir. 1968). But, as previously noted, in that case the Appellant raised pre-*Marchetti* objections to the use of his tax stamp as evidence at trial. For that reason, the holding must be considered unique and inapplicable here.

The Appellant further contends that under *Mackey*, the *Marchetti* holding must be retroactive if a defendant's conviction was not final at the time of that decision. Petitioner argues that since his appeal was pending at the time of the *Marchetti* decision, he is entitled to the benefit of the *Marchetti* holding. This would appear to be the distinction made by Justice Harlan in his separate opinion in *Mackey*. However, the plurality opinion did not make that distinction. Furthermore, the finality rule has been rejected by the Supreme Court both before and after *Mackey*. *Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

Finally, Appellant asserts that, regardless of our decision as to the retroactivity of the 18 U.S.C. Section 1952 conviction, the conspiracy sentence should be vacated, because his conviction might have been based on conduct which was constitutionally immune from punishment. This argument is in error because, first, the conspiracy conviction was based on a violation of 18 U.S.C. Section 1952 and not for violations of the Wagering Tax statutes, and the same considerations which explained the different rationale in *Mackey* and *U. S. Coin* are controlling here; and, secondly, our holding in this

matter regarding waiver applies with equal force to the conspiracy count.

In sum, the Appellant's Section 2255 motion was improper because the *Marchetti* and *Grosso* decisions are not to be retroactively applied to a case like the one now before us.

The Appellant finally asserts that he was entitled to an evidentiary hearing on the issue of waiver and that the District Court's denial of such a hearing was in error. He contends that a hearing was required in order to determine whether there had been any actual waiver, as well as to determine whether he personally waived any of his rights.

In *United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969), the Court stated:

. . . The question whether privilege has been waived also is one of law, and in most cases there will be no factual dispute about it.

There is no dispute about the existence of a waiver in the matter before us now. We have held in the Appellant's first appeal and have reemphasized in this opinion that there was an informal waiver based on the particular circumstances of this case.

The Appellant, nevertheless, continues to assert that there was no waiver of a known right as required by *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and that counsel is not obligated to anticipate future Supreme Court decisions. *O'Connor v. Ohio,*, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966). This court does not disagree with those decisions. We merely believe that *Zerbst* and *O'Connor* are not applicable to the case at bar. *Zerbst* concerned the waiver of right to counsel by a defendant who was both indigent and poorly educated. There was serious question as to whether the defendant's waiver was made intelligently or competently. The Supreme Court reversed the lower court, finding that "a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. at 464, 58 S.Ct. at 1023. In *O'Connor* the court held that a defendant is not charged with

anticipating subsequent Supreme Court decisions for the purposes of making objections. The subsequent decision referred to, however, was handed down after the defendant had exhausted all of his appeals.

In contrast to *Zerbst* and *O'Connor*, the Appellant or at least his counsel were aware of the pending *Marchetti* and *Grosso* decisions. As we noted in the original appeal, Petitioner's trial was conducted in the "shadow" of those cases. The Appellant's reliance on *Zerbst* and *O'Connor* is misplaced.

Petitioner contends that his privilege was of such a fundamental nature that only he could waive his rights, citing *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) for the proposition that trial-type rights may be waived by counsel, but that personal or fundamental rights may be waived only by a defendant. We do not believe that *Williams* makes such a distinction. There the defendant appeared throughout his trial in prison attire. The court expressly stated that this fact may have impinged on his fundamental rights to a fair trial and presumption of innocence. The Court nevertheless found a waiver:

Under our adversary system once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system. (425 U.S. at 512, 96 S.Ct. at 1697)

The court in *Williams* did acknowledge that it was not confronted with a relinquishment of a right of the sort involved in *Johnson v. Zerbst*, supra. And, neither are we confronted with such a right. *Zerbst* concerned the waiver of right to counsel. The defendant in that case was a poorly educated indigent who was not represented by an attorney. That is plainly not the situation before us.

Finally, Petitioner cites *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), to buttress his position. But, *Noia* is not

**534**

applicable to the case at bar. In the recent decision of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court said of *Noia* :

> Noting petitioner's "grisly choice" between acceptance of his life sentence and pursuit of an appeal which might culminate in a sentence of death, the Court concluded there had been no deliberate bypass of the right to have the federal issues reviewed through a state appeal. (433 U.S. at 83, 97 S.Ct. at 2504)

In addition to being unique *Noia* concerned the right to appeal and did not involve decisions at the actual trial.

█ It is our opinion that absent the incompetence of counsel or some other exceptional circumstance, a defendant will be bound by the decisions of his counsel. Mistakes of judgment on the part of counsel, or mistakes of tactics, strategy or policy in the course of a criminal trial do not constitute grounds for a later collateral attack pursuant to Section 2255. *Frand v. United States*, 301 F.2d 102 (10th Cir. 1962).

We conclude that the District Court made no error and the decision is accordingly affirmed.