**The UNITED STATES of America, Plaintiff,**

v.

**Harry H. JESSUP, Defendant.**

No. Crim. 86–142, Civ. A. No. 86–2630.

United States District Court,
W.D. Pennsylvania.

Sept. 30, 1987.

John J. Mead, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Carl Max Janavitz, Pittsburgh, Pa., for defendant.

## OPINION

SIMMONS, District Judge.

Before this Court is a motion to vacate, set aside and/or correct defendant's sentence. On September 17, 1986, defendant was convicted by a jury, of one count of violating 18 U.S.C.App. § 1202(a)(1), which reads as follows:

"Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years or both".

On October 14, 1986, defendant was sentenced to two years imprisonment. Defendant claims that he was denied effective assistance of counsel in three particulars:

1. Trial counsel failed to file a pre-trial motion to suppress the firearms seized in the above proceeding which were a necessary element of the charge against him and which were taken without probable cause and without the parameters of the warrant of seizure issued. A decision upon the forfeiture of April 3, 1986, is still undecided at Criminal No. 85-

156—*United States of America v. Ernest G. Rockwell.*

2. Defendant against his wishes and better judgment took the stand in his own defense, at the insistence of his trial counsel, thus permitting the Government on rebuttal to call the witness, Ernest G. Rockwell, who was the only witness who placed your Movant in contact with the alleged firearms the Government sought to prove he possessed.

3. Defendant requested that his counsel subpoena as a witness one of the employees of the company who sold and installed a water slide in Movant's premises, but said counsel refused to do so.

Defendant's claim is governed by the U.S. Supreme Court holding in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court therein stated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

The *Strickland* Court also expressed the view that:

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed. *Id.* at 697, 104 S.Ct. at 2069.

In regard to the showing of prejudice, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068.

For the reasons which will be hereinafter set forth in this Opinion, defendant has not met this burden of proving that his counsel's assistance was so defective as to require the granting of a new trial.

First defendant contends that his counsel was ineffective because he failed to file a pre-trial motion requesting this Court to suppress the firearm evidence, (several guns), which was seized by the Deputy United States Marshal from certain real property described and referred to in an Order of this Court dated April 3, 1986. (See a copy of said Court Order of April 3, 1986, attached to this Opinion as Exhibit "A" for convenience reference.)

█ Pursuant to the test set forth in the *Strickland* case, cited supra, the defendant must demonstrate in this proceeding a reasonable probability that the outcome of his prior criminal trial would have been different if a suppression hearing had been held prior to said criminal trial.

█ Because this Court is convinced that the said aforementioned questioned evidence in question, (the firearms) would not have been suppressed by this Court under the undisputed factual circumstances of this case, even if a suppression motion as to said evidence had been in fact filed by defendant's counsel and addressed by this Court, defendant's first contention must fail. It is the opinion of this Court that defendant's counsel's failure to file said suppression motion had no bearing whatsoever on the outcome of this case.

A recitation of some history in regard to this matter is in order at this time and this Court will make reference to certain undisputed relevant facts of record in the case of the *United States of America v. Ernest*

*G. Rockwell* filed at Criminal No. 85–156 in this Western District of Pennsylvania.

On July 17, 1985, at Criminal No. 85–156, Ernest G. Rockwell in Count One, was indicted in this United States District Court for the Western District of Pennsylvania for engaging in a continuing criminal enterprise in which said defendant Rockwell obtained profits and property which are subject to forfeiture to the United States of America. Specifically the indictment alleged that some of the property that was subject to forfeiture to the United States of America consisted of all of Rockwell's "rights, interest or investment in a recreational area known as Indian Lake Park."

On October 3, and October 9, 1985, Rockwell was called to testify in this Court in two criminal cases, involving *United States of America v. Hilmer Sandini, et al* (criminal nos. 85–150 and 85–175), and Rockwell testified under oath that he in effect was guilty of engaging in a continuing criminal enterprise of dealing in the sale and distribution of illegal narcotics as he was so charged in the indictment filed at Criminal No. 85–156, and further Rockwell admitted to investing $357,000.00, that he received from said criminal enterprise into the development and improvement of a real property known as Indian Lake Park.

It is undisputed that there was a dwelling house situated on the real property known as Indian Lake Park and it is further undisputed that the guns in question were found housed in said dwelling house by the United States Deputy Marshals who were duly acting pursuant to a forfeiture and seizure Court Order of this Court. (See Exhibit "A" attached to this Opinion)

After Mr. Rockwell's incriminating testimony in the aforementioned *Sandini* case, Rockwell agreed to plead guilty to Count One of his indictment, (engaging in a continuing criminal enterprise), and Rockwell further agreed (as part of his plea bargain) to forfeit to the United States Government all of his right, title and interest in the aforementioned Indian Lake Park real property.

At the time of Mr. Rockwell's Plea Bargain and his subsequent plea of guilty, the presiding United States Judge in Rockwell's criminal case, evidently and clearly was led to believe that Mr. Rockwell had a clearly established legal interest in the Indian Lake Park real property and so pursuant to the Rockwell Plea Bargain and under the authority of 21 U.S.C. Section 853(a), the Court Order dated April 3, 1986, was signed by the Honorable Gerald J. Weber, of this Court, which Order declared that the Indian lake Park real property was duly forfeited to the United States and said Order further instructed that the "United States Marshal for the Western District of Pennsylvania shall seize said real property and retain the same pending disposition by the Attorney General or further order of this Court". (See Exhibit "A" attached to this Opinion)

Pursuant to the Order of Court, (Exhibit "A"), the Deputy United States Marshal entered in and upon the Indian Lake Park real property in order to seize the same and to also properly secure and safeguard the dwelling house from physical harm which was located on said property and which at that time had been declared forfeited to the United States.

Under the circumstances, the Deputy Marshals in following the directive of the Court Order, (Exhibit "A"), reasonably and legally went about the necessary business of making a cursory examination of the interior of the dwelling house to make sure that the then Government property was safe and secure from harm.

During the necessary but cursory examination of the interior of said dwelling house in the course of securing and safeguarding the same from potential harm, the Deputy Marshals inadvertently came upon the subject firearms which were located in the dwelling house and which dwelling house had been forfeited to and seized by the United States pursuant to a Order of this Court. (Exhibit "A")

There can be no doubt of any kind whatsoever that at the time the subject firearms were found and seized the Deputy United States Marshals were clearly operating reasonably and in good faith and pursuant to a valid Court Order which was then in full force and effect. [Subject in time to the seizure of the subject firearms the forfeiture and seizure Order (Exhibit "A") was vacated by Judge Weber].

It is undisputed there was no official misconduct of any kind on the part of the Deputy Marshals during their seizure of the dwelling house and its contents. Here, in the case at bar, a detached and neutral Judge, Judge Weber, prior to the actions of the Marshal, had declared that the subject real property was forfeited to the United States and had ordered the property seized by the United States Marshals.

Since it is undisputed that there was no official misconduct of any kind in this case and since the United States Marshals were at all relevant times acting in good faith and in reliance on the Court Order (Exhibit "A"), and since the exclusionary rule requiring the suppression of evidence is to be applied only when there is official misconduct, there could be no legally proper suppression of the incriminating firearm evidence by this Court in this case under these circumstances, even if a suppression hearing had been given to the defendant in this case. See *United States v. Leon*, 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984).

In addition to the fact that the Marshals acted in good faith pursuant to a seizure Order issued by Judge Weber, the search and seizure was legitimate based upon the government's administrative and regulatory authority which in this case is based upon the necessity of securing the contents of the real property for safekeeping. The United States Supreme Court has stated:

We have also held, for similar reasons that in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable cause requirements as long as their searches meet "reasonable legislative or administrative standards." *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967). See *New York v. Burger*, 482 U.S. ——, ——, 107 S.Ct. 2636, ——, 96 L.Ed.2d 601

(1987); *Donovan v. Dewey,* 452 U.S. 594, 602, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981); *United States v. Biswell,* 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972); *Griffin v. Wisconsin,* 483 U.S. ——, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). See also and compare *Anderson v. Creighton, et al.,* 483 U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The procedure followed by the U.S. Marshals in securing the personal and real property in question, (including the firearms), were well within reasonable administrative standards.

It follows that the failure of defendant's counsel to request a suppression hearing involving the subject firearms is not an example of ineffective assistance of counsel, since the firearms evidence would not have been suppressed even if a suppression hearing had been held.

■ Defendant next contends that, against his wishes and better judgment, he took the stand in his own defense, at the insistence of his trial counsel, thus permitting the government on rebuttal to call the witness, Ernest Rockwell, who was the only witness who placed defendant in contact with the firearms the government sought to prove he possessed. Because there was more than sufficient evidence in the record to show that defendant was in constructive possession of the firearms, this contention must fail.

Conviction for possession of a firearm by a felon can be based on constructive possession or joint possession; constructive possession can be established by showing that the firearms was seized at defendant's residence. *U.S. v. Apker* (8th Cir.1983), 705 F.2d 293, certiorari denied [465 U.S. 1005], 104 S.Ct. 996, 79 L.Ed.2d 229 (1984).

The Government presented undisputed evidence through the testimony of United States Marshals that Mr. Jessup, as President of the Westmoreland Recreational Society was the actual owner of the property where the guns were located. (The dwelling house located in Indian Lake Park, 2740 Clay Pike, which purportedly had been forfeited by Mr. Rockwell). In addition, testimony was offered by the Marshals that Mr. Jessup was staying there at the time of the seizure (R. 56), and that Mr. Jessup's personal effects and papers were present in the house and bedroom. (R. 60, 160) Vehicle registration papers for a 1973 Chevrolet and an owners card for a 1980 Cadillac, both Mr. Jessups and both with the 2740 Clay Pike address were also introduced into evidence. (R. 120, 121) In addition, the Marshals' testified that on previous occasions Mr. Jessup gave the Clay Pike address as that of his residence. (R. 159)

As it was in this property, [in the living room and bedroom] that the guns were found, (R. 62, 67) the jury certainly could have reached the conclusion that Mr. Jessup resided in the said property and was in constructive possession of the guns. This finding would have been sufficient to fulfill the requirements of legal possession pursuant to 18 U.S.C.App. Section 1202(a)(1). Thus, defendant is unable to show any prejudice to his defense.

Defendant's final contention, that trial counsel was ineffective because he failed to subpoena a particular witness, must also fail.

■ There is no indication as to what this witness would have testified at the trial. A bare assertion that a witness was not called is not enough to overcome the presumption that counsel acted adequately. Absent exceptional circumstances, post conviction quarrels as to trial tactics cannot be found to constitute an unconstitutional deprivation of effective assistance of counsel. See *United States v. Nolan,* 571 F.2d 528 (10th Cir.1978); *Moran v. Hogan,* 494 F.2d 1220 (1st Cir.1974).

Throughout the trial, defense counsel vigorously and extensively cross-examined the government's witnesses in order to bolster defendant's defense. During defendant's case, the attorney for defendant called a number of witnesses who testified that the guns did not belong to defendant but in fact belonged to someone else. Witnesses were also called by defense counsel

to try to show defendant did not reside at the seized property. It was clear throughout the trial that counsel for the defendant adequately and effectively investigated the case prior to trial and that counsel demonstrated adequate skill during the trial itself.

It is therefore clear that defendant has not met the two pronged test required by *Strickland, supra.* Defendant has not shown that counsel's performance was deficient or that the performance of counsel prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington,* supra. Defense counsel rendered reasonably effective assistance throughout the trial, and such reasonably effective assistance of counsel is clearly evident in this case when the motions, files and records of the case are reviewed. This Court's own recollection of the trial bears out the fact that the defendant was given very effective assistance of counsel throughout the trial of his case.

For the above stated reasons, defendant's motion to vacate, set aside and/or correct sentence is denied.

An appropriate Order will be issued.

EXHIBIT A

UNITED STATES OF AMERICA

v.

EARNEST G. ROCKWELL

Criminal No. 85–156

ORDER

AND NOW, this 3rd day of April, 1986, upon consideration of the defendant's plea on July 17, 1985, to Count One of the information in the above-captioned case, thereby admitting that he acquired an interest in a parcel of real property known as Indian Lake Park which is traceable to profits obtain as a result of violations of the federal narcotics laws; and

Upon further consideration of the plea agreement between Ernest G. Rockwell and the United States of America dated July 17, 1985, (See Exhibit A attached here-

to and incorporated herein)[*] in which Ernest G. Rockwell agreed to forfeit all assets accumulated through his distribution of drugs, including real property; and

Upon further consideration of the trial testimony of Ernest G. Rockwell on October 3, and October 9, 1985, (See pages 98–101 of the October 3, 1985 transcript and pages 23–26 of the October 9, 1985 transcript attached hereto and incorporated herein as Exhibits B and C) at the trial of *United States of America v. Hilmer Sandini, et al.,* Criminal No. 85–150 and 85–175, in which Ernest G. Rockwell testified under oath that he invested $357,000.00 of narcotics proceeds in the development and improvement of the real property known as Indian Lake Park, and

Upon further consideration of the deed for said real property known as Indian Lake Park (See Exhibit D attached hereto and incorporated herein), which describes said real property;

It is hereby ordered, in accordance with the dictates of 21 U.S.C. § 853(a), that Ernest G. Rockwell, shall forfeit all right and interest in the real property known as Indian Lake Park to the United States;

It is further ordered that the United States marshal for the Western District of Pennsylvania shall seize said real property and retain the same pending disposition by the Attorney General or further order of this Court.

It is further ordered that, pursuant to 21 U.S.C. § 853(n)(1), the United States shall publish notice of this order and of its intent to dispose of said real property in such manner as the Attorney General may direct in the Pittsburgh Press and Pittsburgh Legal Journal. The United States shall also serve written notice of its intent to dispose of the real property on any person alleged to have an interest in the property;

It is further ordered that if no petition for hearing is filed by any third party with this Court within thirty (30) days after publication or receipt of the notice as required in 21 U.S.C. § 853(n)(2), the United States may dispose of the real property in accord-

[*] EDITOR'S NOTE: Exhibits A–D referenced herein were not received for publication.

**1042**

ance with law; however, if a petition is filed, the Court shall hold a hearing to determine the validity of the third-party interest.

/s/Gerald J. Weber
United States District Judge

ORDER

AND NOW, to wit, this 3rd day of April, 1986, upon consideration of the within Motion to Seal, it is hereby ORDERED that the Court's order authorizing seizure of a parcel of real property known as Indian Lake Park be sealed until further Order of Court.